STATE ex rel. DULUTH BREWING & MALTING COMPANY v. DISTRICT COURT OF ST. LOUIS COUNTY and Others.[1]

March 19, 1915.

Nos. 19,221—(310).

**Workmen's Compensation Act — injury arising out of employment.**
The finding of the trial court that an accidental injury arose out of and in the employment, within the meaning of the Workmen's Compensation Act, is sustained.

Upon the relation of the Duluth Brewing & Malting Co. this court granted a writ of *certiorari* directed to the judges and clerk of the district court for St. Louis county to review the proceedings in the matter of compensation for injury to Charles DeCook, an employee of relator, whereby he was granted, Cant, J., compensation for personal injuries at the rate of $8.10 per week for a period of 100 weeks. Affirmed.

[1] Reported in 151 N. W. 912.

*Baldwin, Baldwin & Holmes,* for relator employer.
*John Jenswold* and *C. R. Magney,* for respondent employee.

HOLT, J.

*Certiorari* to review the findings and judgment of the district court in a proceeding therein to determine the right of an injured servant to compensation under the Workmen's Compensation Act (chapter 467, p. 675, Laws 1913). Findings were made to the effect that the servant lost the sight in one eye through an accidental injury arising, within the meaning of the act, out of and in the course of employment, and judgment was entered against relator. If the injury arose out of and in the course of the employment the judgment is right.

The injured servant, Charles DeCook, had worked for relator, in the bottling house of its brewery at Duluth, Minnesota, as the foreman's helper during more than five years prior to the accident. In the bottling room were a number of electric light bulbs. To protect them against breakage, a wire screen cover was provided. These screens were fastened with a lock to prevent the bulbs from being stolen. The foreman carried the key—a simple three cornered contrivance. It was part of DeCook's duty to replace any of the light bulbs which broke or became defective. In doing this he had to get the key from the foreman, unlock the cover, take the broken bulb to the foreman, then go to the office or store room for another bulb, replace it, lock the guard and return the key to the foreman. On April 9, 1914, DeCook had occasion to go to the basement where some other employees were engaged. One of these handed DeCook what appeared to be an empty cartridge shell of unusual length. It occurred to DeCook that the empty shell could be easily fashioned into a key so as to save the time and energy spent in hunting up the foreman and carrying the key back and forth when light bulbs had to be replaced. During the working hours, in the afternoon of April 9, 1914, DeCook went to the place in the room where the tools and appliances to make the ordinary repairs called for in the business were kept, took a hammer, and began to hammer the supposed empty shell into a key. The shell happened to be an unex-

129 M.—12.

ploded dynamite cap, and the third blow set it off. A fragment therefrom pierced plaintiff's right eye and destroyed the sight.

It is earnestly insisted that the facts show DeCook to have departed from his duties as a servant when he met with the accident, and to have been engaged in something entirely at variance with the master's business and without the scope of the employment. Dynamite caps were neither kept nor used in relator's establishment, and, it is said, DeCook had no express or implied authority to make a key, hence the accident cannot be held to have arisen out of the employment.

The law in question was intended to relieve against the hardships resulting from the many unfortunate accidents which do take place in this age of extensive use of complicated machines and appliances, and of great enterprises necessitating the indiscriminate employment of large forces of laborers and mechanics. All question of the employer's fault or negligence is eliminated from cases arising under this act. The intention was to compensate all accidental injuries growing out of and received in the service except those intentionally self inflicted or due to intoxication. The statute is highly remedial in character. The courts ought therefore to guard against a narrow construction, and should not exclude a servant from the benefits thereof, unless constrained by unambiguous language or the clear intent as gathered from the entire act.

Both employer and employee in this case are within Part 2, which provides that in every case of personal injury "caused by accident, arising out of and in the course of employment, without regard to the question of negligence," compensation shall be paid according to a fixed schedule. Section 8213, G. S. 1913. The clause here involved is afterwards defined in the act in these words: "Without otherwise affecting the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of employment,' it is hereby declared: Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen, and shall not include an injury caused

by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment." Section 8230, (i).

The trial court found expressly that DeCook was within the partial definition quoted when injured; and the evidence sustains the finding in that respect. However, the so called definition is rather in the nature of a limitation of the clause than an all inclusive definition thereof, so that it still is to be determined whether the injury to DeCook arose out of and in the course of his employment. In England and also in some courts here attempts have been made, with more or less success, to formulate general rules with regard to the shade of distinction between the terms out of and in the course of, as used in the act. All agree that the expressions are not intended to be synonymous. An injury may be received in the course of the employment, and still have no causal connection with it so that it can be said to arise out of the employment. Bryant v. Fissell, 84 N. J. Law, 72; McNicol's Case, 215 Mass. 497, 102 N. E. 697; Barnes v. Nunnery Colliery Co. Ltd. 1912 App. C. 44 (Eng.); Plumb v. Cobden Flour Mills Co. Ltd. 1914 App. C. 62 (Eng.), also reported in 109 Law Times, p. 759; Hills v. Blair, 182 Mich. 20, 148 N. W. 243; Hopkins v. Michigan Sugar Co. 183 Mich. —, 150 N. W. 325. Under the decisions it is reasonably clear that DeCook's injury was received in the course of employment. The doubtful proposition is whether it arose out of the employment.

We shall not attempt to formulate a definition of the phrase, accidental injury arising out of the employment, except to say that the accident causing the injury must arise out of work or business being done for the master either by direct or implied authority. The trial court evidently took the view that De Cook in good faith believed he was furthering his master's business, and performing an act which he might reasonably be expected to do when he undertook to supply himself with a key. He had never been told that the light bulbs were to be under lock as to him who was charged with the duty of seeing that the broken and defective ones were replaced. He had a variety of matters to attend to in which he, like

servants generally, had to rely on the promptings of his own judgment as to details. Undesirable, indifferent, and of little value indeed are the services of an employee who must be expressly directed as to the time, manner and extent of doing each particular task. Hence, when a servant undertakes in the course of his employment, during the proper hours therefor, and in the proper place to do something in furtherance of his master's business, and meets with accidental injury therein, the trial court's finding, that the accident arose out of and in the course of employment, should not be disturbed, unless it is clear to us that the ordinary servant, in the same situation, would have no reasonable justification for believing that what he undertook to do when injured was within the scope of his implied duties. If another servant duly engaged in the master's work had had his sight destroyed, instead of DeCook, in this accident the thought would have been almost irresistible that this law was meant to cover such injury. But, upon the facts in this case, we doubt whether DeCook should occupy a less favorable position. If the attempt to make a key was reasonable within the scope of his employment, the fact that, from ignorance or error of judgment, he made use of dangerous material, not provided by the master, should not necessarily exclude the conclusion that the injury arose out of the employment. The term cannot be restricted to injuries caused from anticipated risks of the service if the law is to be of the benefit intended.

Our conclusion is that the judgment is right, and should stand.

Affirmed.

BROWN, C. J. (dissenting).

I am unable to concur in the view that in making the key referred to in the opinion plaintiff was engaged in the work of his employment, or that the injury suffered by him while so engaged arose out of such employment, within the meaning of the compensation act. The key was being made solely for the convenience of plaintiff, and in no proper view in furtherance of the employer's business. The matter of what tools and instrumentalities shall be furnished employees for the discharge of their duties, rests wholly

with the master, and Part 2 of the compensation act should not be construed so as to justify an employee in supplying tools or implements he may think should be furnished.