P. A. McCRARY, APPELLEE, v. JOHN F. WOLFF, APPELLANT.

FILED FEBRUARY 27, 1923.  No. 22244.

1. **Master and Servant:** EMPLOYERS' LIABILITY ACT: INJURY ARISING OUT OF EMPLOYMENT. Evidence in support of the finding of the trial court that an accidental injury resulting in death arose out of and in the course of employment, within the meaning of the workmen's compensation act, examined and finding sustained.

2. ———: ———: DEPENDENCY. Likewise, as to claim of dependency.

3. ———: ———: COMPENSATION: PENALTIES. Under the workmen's compensation act, periodical instalments of compensation for an injury to an employee do not become due, in the sense that they carry the statutory penalties for nonpayment, until the obligation of the employer is definitely ascertained or settled, where there is a reasonable ground for controversy over defendant's liability or other material issues in the case and defendant in good faith pursues his remedy with proper diligence.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. Affirmed on condition.

Kennedy, Holland, DeLacy & McLaughlin and E. J. Svoboda, for appellant.

A. L. Tidd and Aubrey Duxbury, contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH, DAY and GOOD, JJ., TROUP, District Judge.

TROUP, District Judge.

Action by dependent to recover a death claim against the former employer of deceased under the workmen's compensation act as contained in chapter 198, Laws 1913. A decree was entered for claimant for $9.75 a week for 350 weeks, burial, hospital and medical expenses, $180 penalty for waiting time, and $200 attorney's fees. Defendant appeals.

On September 30, 1920, and for some time prior thereto, the deceased, a boy about 19 years of age, was employed by defendant to do work of a general or miscellaneous character in and about defendant's garage in the city of Plattsmouth, Nebraska, including messenger service. At or about 1 o'clock p. m. on September 30 deceased was directed by defendant to go to a certain storage battery station, a place about a block and a half distant from defendant's garage, to get a battery which had been left there for repairs. As the boy started on his errand he espied an acquaintance driving a truck on the street at the rate of about five or six miles an hour, and whom he knew was going by the place where deceased was sent on his errand, and, approaching his friend's truck he attempted to mount upon the running-board, but, missing his hold, he fell underneath the wheels of the truck and was so badly crushed that he died the next day.

That part of the section of the act pertaining to this feature of the case is as follows: "Compensation shall be made for personal injuries to or for the death of such employee by accident arising out of and in the course of his employment, without regard to the negligence of the employer, according to the schedule hereinafter provided, in all cases except when the injury or death is caused by wilful negligence on the part of the employee; and the burden of proof of such fact shall be upon the employer." Laws 1913, ch. 198, sec. 10 (Comp. St. 1922, sec. 3033).

The case is much simplified by defendant's announcement in open court that he makes no claim whatsoever that the accident occurred through the wilful negligence of deceased. We also understand that defendant does not claim that the accident did not occur "in the course of employment." Indeed, it could not well be contended otherwise from the fact that deceased was actually on his way in the performance of the errand of his master when the accident happened. The only question then upon this feature of the case is: Did the accident arise "out of" the boy's employment?

It may be proper to remind ourselves again that, the statute we are dealing with being highly remedial both in character and purpose, the same should be liberally construed to attain the accomplishment of its beneficent purpose. *Parson v. Murphy,* 101 Neb. 542; *United States Fidelity & Guaranty Co. v. Wickline,* 103 Neb. 21. The intention of the act being to compensate all accidental injuries growing out of and received in the service, except those resulting from wilful negligence or intoxication, the courts should guard against a narrow construction and should not exclude a servant from the benefits thereof unless constrained so to do by the clear intent as gathered from the entire act. *State v. District Court,* 129 Minn. 176; *Stephenson v. Schelk,* 173 Wis. 251.

The following undisputed extracts from the evidence will indicate the character of deceased's employment and to some extent the custom of deceased and others employed at defendant's garage to jump on and off moving cars in the performance of their work in and about the garage: "Q. You may state, Mr. Wolff (the boy's employer), what work Loren did around the garage. A. He drove for the doctors, washed cars and ran errands, whatever there was to do—general work around the garage. Q. You may state to the court whether you gave Loren McCrary any instructions prior to this accident. A. I did. Q. You may state what those in-

.structions were.  A. I instructed him to get a car out of the alley, and before it could be moved there was a battery at the station that it was necessary to get and place in the car; and to get some glass for a window light that was broken, to repair it.  Q. You may state, Mr. Wolff, whether or not the help frequently step upon moving automobiles and trucks. A. It is frequent that they have occasion to step upon moving cars when they want to ride.  We frequently rent cars out to drive yourself, and they are there to oil and start them out, and they will step on and start them out and then step off frequently when they are moving. Q. You had seen Loren do this?  A. No doubt.  Q. And you do that yourself, do you not?  A. Yes, sir; any one does who is around a garage." The same witness, upon being interrogated on cross-examination if he had not expected deceased to take a car from the garage in going for the battery, answered: "I didn't so instruct him.  I didn't tell him how to get it.  The only thing I would say was, 'If you can run errands and can make time by taking a car, take a car.'" Arthur Moran, an employee at defendant's garage with deceased, testified substantially to the same effect.

From this evidence we are justified in finding that the deceased had at least the implied license from his employer to jump on and off moving cars in or about the garage in the performance of his work, as they all did.  If the accident had happened while deceased was attempting to board a car in or about the garage, could there be any doubt that the accident arose "out of" his employment?  Suppose this same truck driver whose car was the means of the accident was driving his car out of the defendant's garage upon the street at a time when the deceased was about to start on his errand, and the deceased, being a friend of the driver and knowing that  he was about to drive past the place where deceased was going, attempted to

get aboard while the car was moving at the rate of but five or six miles an hour, scarcely faster than a man can walk, and, missing his hold, the accident happened, could there be any reasonable escape under the evidence from holding that the accident arose "out of" as well as in the course of his employment? We think not. If not, would it not be unreasonable to hold that, because the accident happened apparently less than 100 feet from the garage on the street, but otherwise under the same circumstances above supposed, the accident did not arise "out of" and in the course of employment? It is fair to presume that the young man had in mind when he sought to board the truck that he could accomplish his errand in less time than he could by walking, and thus expedite his master's business. If that be true, then in doing what he did it can scarcely be said, under the evidence, he was departing from the express or implied instructions of his employer.

Ruegg, in his work on Employers' Liability and Workmen's Compensation (8th ed.) 346, says: "The words 'arising out of the employment' may be satisfied if it is shown that the occupation in which the workman was engaged, though not strictly part of his duties, was being done in the mutual interest of the employer and himself"—citing cases.

In *M'Quibban v. Menzies,* 37 Scottish L. R. 526, the court said: "The 'arising out of and in the course of the employment' appear to me to be sufficient to include something which occurs while the workman is in his master's employment and on his master's work, although he is doing something in the interest of his master beyond the scope of what he was employed to do."

In *Buvia v. Daniels* Co., 203 Mich. 73, the court said: "An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

McCrary v. Wolff.

Almost innumerable cases along the same line might be cited, but a few additional ones only must suffice: *Mann v. Glastonbury Knitting Co.,* 90 Conn. 116; *Beaudry v. Watkins,* 191 Mich. 445; *Zappala v. Industrial Ins. Commission,* 82 Wash. 314; *State v. District Court, supra.*

It is true, however, that a correct determination of any case of this character must depend largely upon the peculiar facts and circumstances surrounding the particular case in hand. Sometimes what would seem at first to be a very slight fact or circumstance arising in the case will influence the entire decision, resulting in a conclusion different from what otherwise it would have been. This is forcibly illustrated by the case of *State v. District Court,* 138 Minn. 326, the one most relied upon by defendant in the case at bar. Except for a bare inference indulged in by a majority of the court in the case cited and on which alone they base their decision without a hearing upon the facts, giving the decision the appearance of being inconsistent with that court's former decision in *State v. District Court,* 129 Minn. 176, we might well have expected a different conclusion and one more in harmony with the latter case. We are of the opinion the trial court did not err in holding that the accident was one "arising out of and in the course of employment."

The defendant insists that it has not been shown that there are any dependents in this case, that the testimony in behalf of the alleged dependent is exaggerated and unreliable, but that, even admitting dependency, the amount awarded is excessive. We do not believe it is either necessary or profitable to enter into a general discussion of the testimony relating to dependency. The evidence shows that at the time of the accident deceased was a minor 19 years of age, living in the home of his parents with 3 minor brothers and sisters between the ages of 8 and 17 years, and was accustomed to pay into the family exchequer the sum of $65 a month

toward the support of the family; that this sum was required of their son by the parents, that they needed it and relied upon it to assist in defraying the living expenses of themselves and family. If these facts are true, then, under all of the authorities, the claimant herein was a dependent. The matter was heard before the compensation commissioner and again on appeal before a judge of the district court, before both of whom the various witnesses appeared in person, giving to the ones presiding the best opportunity to judge of the truthfulnss of their statements and the value to be placed thereon, and both commissioner and judge found the claimant was a dependent and entitled to the award made. We have examined the evidence with much care and are not prepared to say that, under the evidence and the law pertaining thereto, the finding is not correct. Unless it is clearly wrong, it should not be disturbed. *Simon v. Cathroe Co.,* 106 Neb. 535, and cases cited; *Swift & Co. v. Prince,* 106 Neb. 358; *Way v. Georgia Casualty Co.,* 107 Neb. 508.

In respect to the amount of the award made, will say that, if the same is not precisely correct, we think it is so nearly so that to demonstrate that it is not would require a refined calculation for which the record furnishes no basis. It is quite apparent that the method suggested by defendant is not correct. One member withdrawn from a family of six does not decrease the living expenses of the family one-sixth. Certain fixed charges, such as rent, fuel, light, and perhaps other like expenses, remain the same with a family of five. The method adopted in this instance seems to be in conformance with the customary method under the statute in arriving at an award to be made in a case of partial dependency, and we feel justified in accepting it, at least until some more precise method is devised.

The lower court included in its judgment the sum of $180 as penalty against defendant for delay in making payments after the award had been made by the compen-

sation commissioner. We presume this was done in pursuance of what the court believed was a peremptory requirement of the statute. The defendant protests against the assessment of this penalty, and we are of the opinion his protest is well-founded, and that the record herein presents a case where an assessment of the penalty is not contemplated by the statute. This provision for penalty was placed in the statute evidently with the object, not only to induce prompt payments after the award has been finally established, but, in case the award is contested, to compel prompt action on the part of the defendant in making his defense, and to defeat frivolous delays and chronic procrastinations often occurring in the course of legal proceedings; and, when any of these conditions are found to exist, the penalty should be promptly imposed. But we think it was not intended to apply where it satisfactorily appears that the defendant in perfect good faith is in the process of testing the correctness of a finding against him on one or more material issues in the case and defendant is prosecuting his remedy with proper diligence. Under such circumstances, the defendant should be permitted to prosecute his defense free from the imposition of a burdensome penalty. With these conditions in view and as a guide, the question of assessing a penalty or not should be left to the sound discretion of the court. This we think may now be considered the settled doctrine of this court. *Osborn v. Omaha Structural Steel Co.*, 105 Neb. 216; *Hall v. Germantown State Bank*, 105 Neb. 709; *Swift & Co. v. Prince, supra*.

In this case there is nothing whatever in the record to indicate that the defendant did not, from the very first and in the very best of faith, dispute and expect to continue to dispute all liability to the claimant or any one else on account of the accident and death of deceased. So, if any delay occurred between the happening of the accident and the claimant's application to the compensation commissioner for an award, that delay

was due to the claimant herein, and not to the defendant. There is nothing in the record to show when the application was filed with the commissioner, but it does appear that it was heard on April 4, 1921, the award made by the commissioner on April 11, notice of appeal by defendant on same day, petition on appeal filed April 18, the issuance of summons forthwith, the hearing in the district court on June 18. Certainly this record discloses no unnecessary delay on the part of defendant. That the nature of the case and the uncertainty of defendant's liability and the question of dependency afforded grounds for reasonable controversy, there can be no doubt. We think the penalty should not have been imposed, and, therefore, the same will be disallowed.

Defendant complains that the court erred in admitting in evidence certain statements of deceased made to the attending physician shortly after the accident as to how it happened. The point is not well taken. The statements were clearly *res gestæ*. *Collins v. State*, 46 Neb. 37.

The decree of the district court is, therefore, in all things approved, except as to the assessment of penalty of $180, which is set aside. If plaintiff files a remittitur of $180 in this court within ten days from notice of filing of this opinion, the decree will be affirmed; otherwise, the proceeding will be remanded, with direction to the district court, on the record already made, to reform the decree to comply with the views herein expressed.

AFFIRMED ON CONDITION.