## IDA C. OLSON v. ROBINSON, STRAUS & COMPANY AND ANOTHER.[1]

July 2, 1926.

No. 25,416.

**Employe not necessarily put beyond protection of compensation act by disobeying orders.**

1. The compensation act is to be liberally construed to secure to employes the benefits intended, and an employe is not necessarily placed outside the protection of the act by disobeying an order.

**Evidence sustained finding that death of stock boy arose out and in course of employment.**

2. The finding of the Industrial Commission that the accident in question arose out of and in the course of the employment is sustained by the evidence.

Workmen's Compensation Acts, C. J. p. 40 n. 95; p. 86 n. 84 New; p. 115 n. 37.
See notes in 23 A. L. R. 1166; 26 A. L. R. 166; 5 R. C. L. Supp. p. 1574 et seq.

Certiorari to review order of Industrial Commission awarding compensation under the Workmen's Compensation Act. Affirmed.

*Durham & Lystad* and *F. A. McKennett,* for relators.

*Hugo Hendricks,* for respondent.

TAYLOR, C.

Certiorari to review the decision of the Industrial Commission awarding compensation to the respondent for the death of her minor son, Elmer Olson.

Elmer, not quite 15 years of age, had been employed for several months by `Robinson, Straus & Company, and at the time of the accident was a stock boy in the hat department on the third floor. The receiving and shipping room was in the basement and in charge

[1] Reported in 210 N. W. 64.

of the receiving and shipping clerk who had two assistants at the time in question. It was their duty to sort and check the goods received and convey them to the proper floors of the six-story building by means of a freight elevator provided for that purpose. The express as it is termed in the record—meaning the goods received by express—usually arrived about 10 o'clock in the forenoon and was distributed at once. On March 25, 1925, Elmer brought up the express for the hat department on the freight elevator and placed it in the back room of that department. Shortly thereafter his body was found at the level of the first floor crushed between the platform of the elevator and the shaft. He evidently had undertaken to return the elevator to the basement, but no one saw what he did or knew how the accident happened.

The relators contend that Elmer was doing an act wholly outside the scope of his employment at the time of the accident; and that the finding of the commission that the accident arose out of and in the course of his employment is not sustained by the evidence.

It was not a part of the duty of the stock boys on the third floor to bring up goods from the receiving room, and they were forbidden to use or operate the elevator. Nevertheless they occasionally went after the express for their department and brought it up to their floor on the elevator. That they occasionally used and operated the elevator for this purpose was evidently known to the receiving clerk who had charge of it, but seems not to have been known to the president of the company who was also the managing officer in charge of the third floor. At the time Elmer took up the express, the receiving clerk's assistants whose duty it was to take it up were both absent. Elmer had been in that department only two or three weeks and, although he had doubtless assisted in taking up the express previously, this so far as appears was the first time that he had taken it up alone. But William Schwendig, with whom he worked and who had been a stock boy in that department for several years, had gone after the express and brought it up alone at various times for a year or more preceding the accident.

The compensation act is to be liberally construed to secure to employes the benefits intended in enacting it. State ex rel. v. Dis-

trict Court, 129 Minn. 176, 151 N. W. 912; State ex rel. v. District Court, 133 Minn. 439, 158 N. W. 700; State ex rel. v. District Court, 141 Minn. 83, 169 N. W. 488; State ex rel. v. District Court, 142 Minn. 410, 172 N. W. 310; Harris v. Kaul, 149 Minn. 428, 183 N. W. 828.

That the employe may have been acting in disobedience of orders at the time of the injury does not necessarily place him outside the protection of the act. Frint Motor Car Co. v. Industrial Comm. 168 Wis. 436, 170 N. W. 285; Schneider, Workmen's Compensation Law, p. 624, et seq.

The accident to Elmer happened in the course of his employment, Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, and while he was engaged in furthering the business of his employer. The question is whether he had departed from the work he was employed to do to such an extent that it cannot be said to have arisen out of the employment.

In State ex rel. v. District Court, 129 Minn. 176, 151 N. W. 912, it was the duty of the employe to replace broken or burned-out electric light bulbs. A wire screen was placed over the bulbs and locked to prevent them from being stolen. When a bulb was to be replaced he was required to procure from the foreman the key which unlocked the wire screen, replace the bulb, relock the screen and then return the key with the broken bulb to the foreman. To save himself the trouble of procuring the key from and returning it to the foreman whenever he had occasion to replace a bulb, he undertook to make a key for himself with the tools provided for making ordinary repairs and was injured. He was awarded compensation and the award was sustained.

In Durrin v. Meehl, 163 Minn. 325, 204 N. W. 22, Walter Durrin was injured while handling lumber in a small sawmill. The employer testified that on account of Durrin's age and weakness he had been employed to haul water for the engine and forbidden to assist in the mill. It appeared however that he had assisted in the mill to some extent and the award was affirmed.

In Frint Motor Car Co. v. Industrial Comm. supra, the employe was directed to perform his work in a designated place, but left it

to further his master's interest and was killed. He was held to be within the act.

In Hafer W. C. Co. v. Industrial Comm. 295 Ill. 578, 129 N. E. 521, a car drawn by a mule was sent to another part of the mine for some timbers. A timberman was sent along to help load them. At the request of the driver, he drove the mule on the return trip and was injured. It was not a part of his duty to drive the mule or manage the car, but he was allowed to recover.

In Hartz v. Hartford Faience Co. 90 Conn. 539, 97 Atl. 1020, Hartz was injured while lifting a barrel. It was claimed that he was employed to do only clerical work and that this was outside the scope of his employment. He was allowed compensation, the court saying:

"What he was engaged in doing was for his master's benefit and to push on his work. If a workman depart temporarily from his usual vocation to perform some act necessary to be done by some one for his master, he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself. A rule of law which put such an employee outside his usual course of employment and so deprived him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness and promote sloth and inactivity in employees. It would certainly prove detrimental to industry, and such a spirit of disregard of the master's interest, if carried into all of the work, would in time cripple the industry."

See also Industrial Comm. v. Koppers Co. 66 Colo. 596, 185 Pac. 267; and Schneider, Workmen's Compensation Law, p. 700.

The Industrial Commission has found that the accident to Elmer Olson arose out of and in the course of his employment, and we are of opinion and hold that the evidence is sufficient to sustain that finding. We are of opinion that the act he performed was so related to the duties he was employed to perform and was performed under such circumstances that it was permissible for the commission, as triers of fact, to find that he had not knowingly departed from the sphere of his duty to such a substantial extent as to place his act outside the scope of his employment.

The award is affirmed.