# NELLIE ORCUTT v. TRUSTEES OF WESLEY METHODIST EPISCOPAL CHURCH.[1]

January 28, 1927.

. No. 25,716.

**Finding sustained that janitor of church was killed in course of his employment.** .

The evidence sustains the finding of the industrial commission that the deceased employe, the janitor and caretaker of a church, was killed in the course of his employment, though the work was not that which he was specifically directed to do.

Workmen's Compensation Acts,—C. J. p. 40 n. 95; p. 86 n. 82; p. 115 n. 37.

---

See note in L. R. A. 1916A, 40 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

Certiorari to review the order of the industrial commission awarding compensation in a proceeding under the workmen's compensation act. Affirmed.

*H. E. Maag* and *Joss, Ohman, Fryberger & Parker*, for relator employer.

*C. E. Warner* and *Joseph Harkness, Jr.*, for respondent beneficiary.

[1]Reported in 212 N. W. 173. `

DIBELL, J.

Certiorari to review the order of the industrial commission awarding compensation to the dependent widow of the deceased employe, Ernest Orcutt.

The only question is whether the injury which resulted in Orcutt's death arose in the course of his employment.

Orcutt was in the employ of the defendant as a janitor and caretaker. On September 8, 1925, he fell through the skylight in the attic into the auditorium below and received injuries from which he died a few days later.

The belfry of the church was infested with pigeons. They were a recognized nuisance. They injured the building. There is evidence that they disturbed the sleep of persons in adjoining apartments. Some had been shot because they were a nuisance. On September 8, 1925, two members of the house committee met at the church to devise means of remedying conditions. Authority to act had been conferred upon them. Orcutt was at work in the basement mopping. He had the keys and conducted the two members to the belfry. They made an investigation, apparently in the presence of Orcutt, and "thought it high time something be done about cleaning it out," and there was some talk about what should be done. They had in mind screening them out. Orcutt came down with the committee members and resumed his work in the basement. The members left about 4 o'clock and about 4:30 Orcutt fell through the skylight. Just what he did after the members of the committee left is not definitely known. He went to the attic, for he fell through the skylight from there. After the accident some pigeons which it is to be inferred he had caught and put in a sack were found near the place where he fell. The claim of the defendant is that Orcutt returned to the attic and caught the pigeons for his own purposes, and in doing so departed from his employment so much as to prevent compensation. The finding of the industrial commission is against the claim that he was not in the course of his employment.

When he was hired Orcutt was not told each specific task which he was to do. He was janitor and caretaker of the church charged

with the duties attendant upon such position. There was no one over him to direct every movement. To some extent he might exercise his own initiative. In State ex rel. D. B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912, the court, speaking of course to the particular facts present, said that "when a servant undertakes in the course of his employment, during the proper hours therefor, and in the proper place to do something in furtherance of his master's business, and meets with accidental injury therein, the trial court's finding, that the accident arose out of and in the course of employment, should not be disturbed, unless it is clear to us that the ordinary servant, in the same situation, would have no reasonable justification for believing that what he undertook to do when injured was within the scope of his implied duties." The case before us is perhaps as strong for the plaintiff as Young v. Bjornes, 165 Minn. 473, 206 N. W. 933, where the finding of the commission upon evidence far from certain was sustained.

The compensation act is liberally construed. An employe is not necessarily outside its protection, though not in strict obedience of orders, or though he is disobeying them. The cases are discussed in Olson v. Robinson Straus & Co. 168 Minn. 114, 210 N. W. 64.

Orcutt was on the premises of his employer. The accident occurred during his working hours. His work was not confined to specific tasks. He was a caretaker and janitor, with the duties attendant upon such a position, and had some discretion. He was not as a matter of law without the compensation act in doing acts, not directed but in good faith undertaken in the furtherance of his employer's interests. The evidence sustains the finding of the commission. It would permit a contrary finding.

Order affirmed.

Stone, J. (dissenting).

That our duty is to construe the compensation act liberally has nothing to say to the case, for the necessity remains to find a ponderable basis for it in the evidence before sustaining a finding for the affirmative of the issue. No such basis has been discovered by my search of record and briefs. And it appears to me plainly that, if

there is any such evidence, it is not only outweighed but completely obliterated by contrary proof.

The conflict, if any, is between the inferences and not in the evidence itself. The proof is that Orcutt was mopping the basement floor when he was interrupted to admit to the belfry the members of the committee appointed to get the pigeon nuisance abated. That committee then and there decided that the first step in the abating process was the installation of effective screen barriers against the birds. They did not then suggest to Orcutt, and no consideration of the situation could have resulted in the suggestion, that in the absence of the screens there could be even a beginning on the abatement of the nuisance by hand catching a few pigeons in the attic. Without such a beginning the church would not be served and Orcutt could not have believed otherwise. Hence, it seems to me, every conclusion is negatived except that Orcutt was induced to go after the doves because of their edibility and so for reasons wholly personal to himself and not at all connected with his employment.

Incidentally it is a significant item of proof that the job of mopping upon which the deceased was engaged was never finished. How likely is it that if his thought was to serve his employer he would have quit, short of its completion, that definitely assigned task to engage in one not only unassigned but so obviously futile? The main nuisance was not in the attic but in the belfry. There certainly can be no suggestion that catching a few birds in the attic would have remedied, even temporarily, the condition in the belfry. That view of the case is put beyond question by the ante mortem statements of the deceased himself. He questioned his own conduct— "Why did I go up there"—and later said that he did so "to catch pigeons." I can find no adequate basis for the conclusion that he may have thought it was to serve his employer, or that he had "reasonable justification for believing that what he undertook to do * * * was within the scope of his implied duties." State ex rel. D. B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912. Young v. Bjornes, 165 Minn. 473, 206 N. W. 933, seems to me clearly distinguishable because there the employe was injured by falling,

in some fashion wholly unexplained, from a ladder upon or with which he was employed under what amounted, at the time being, to the immediate supervision of his employer, who was personally present.

HOLT, J. (dissenting).
I join in the above dissent.