MARTHA BUSHING, Appellee, v. IOWA RAILWAY & LIGHT COMPANY, Appellant.

No. 39785.

SEPTEMBER 24, 1929.

*E. N. Farber* and *Donnelly & Lynch,* for appellant.

*Ray P. Scott,* for appellee.

DE GRAFF, J.—There is little, if any, conflict in the evidence. On December 9, 1917, and for some time prior thereto, August Bushing, deceased, husband of the appellee, Martha Bushing, was employed by the appellant, Iowa Railway & Light Company, as a fireman in the company's power plant located at Marshalltown, Iowa. His duties were the general and ordinary duties of a fireman, and also the disposing of ashes and the shoveling of coal in the yard. The furnaces were fed by mechanical stokers. The employee's working hours were from 1 o'clock in the afternoon until 11 o'clock in the evening. Both employer and employee were under the Workmen's Compensation Law.

There were four boilers in the plant, placed in a row facing south, and the boiler tended by the deceased was the one to the extreme west side of the building, and located about 50 feet from the east wall. On the east side of the boiler room there is a balcony, or gallery, which is about 10 or 12 feet above the floor of

the boiler room. On this balcony was a water heater, used for heating the water before it was fed into the boilers, steam pipes, and a water meter. An iron ladder led from the boiler-room floor to the balcony, and at a little distance from this ladder, a wooden ladder led from the balcony to the top of the water heater. The water meter was located directly above the heater and at the top of this second ladder. The engineer made daily readings of the meter and kept record thereof. In the east wall, and at a height of about 7½ feet from the balcony floor, were several windows, one of them directly behind and above the water heater, and another 3 or 3½ feet to the north. These windows were used as ventilators, and could be opened or closed by means of chains hanging from the tilting sash to within reaching distance from the balcony floor. Above the water heater were several water and steam pipes, running horizontally north and south, and some other pipes extending vertically. The water heater stood about a foot or more from the east wall. Along the wall, and extending from the north to the bottom of the window located a short distance north of the water heater, was an iron pipe, about 1½ inches in diameter, and used as a conduit for electric wires leading to a transformer outside of the east wall. This pipe was about 14 inches below the level of a 3-inch water pipe, and running alongside of the latter pipe was a 4-inch pipe, but a few inches above the level of the 3-inch pipe. Some pieces of planks had been left by workmen, resting on the top of the heater and the window ledge directly behind the heater. The record shows that but little attention was paid to the opening and closing of these windows, and generally they remained partly open. The chain attached to the window north of the heater hung down in such a manner that it could come in contact with the conduit inclosing the electric wires. These wires carried a voltage of about 2,200 volts.

On the afternoon of December 8, 1917, Bushing went to his work at the usual time, and put in about two hours shoveling coal in the yard. He then engaged in putting his boiler in shape for the evening load, which commenced between 6 and 7 o'clock. Sometime after 4 o'clock of that day, he was missed. The last work that he did before he was missed was to pull the ashes from his boiler, and wheel and dump them into the basement. A search was instituted, but he was not found until the following morning,

about 7:30 A. M. His body was found on top of the two pipes above the water heater, with his shoulder and head resting on the plank extending from the top of the heater to the window ledge. His hands were crossed, his right leg was crossed over the left, and his left leg rested on the pipes. His hat was over his eyes, and down to a line with his nose. His body was lying in a position of rest, and gave no evidence of any struggle. In what manner Bushing got into the position in which he was found, and what he was doing at such a place, is not shown by the record. The finding of the Iowa industrial commissioner on this point is as follows:

"Just why this workman was on the balcony where his body was found, is not shown by the record, and is evidently beyond human knowledge."

There was no testimony given before the Iowa industrial commissioner that Bushing had ever been on the balcony before, and there was no apparatus located there which was in any way connected with his work of firing the boiler. There were no marks upon his body indicating that he had fallen into the position in which he was found. The only external evidences of injury existing were burns on the palm, forefinger, and thumb of the left hand. These burns were not extensive in area, but appeared to have been caused by extreme heat. After the discovery of the body, tests were made for a short circuit in the electric wires on the balcony. A short circuit was found in the wiring inside the iron conduit which ended at the south end of the window to the north of the water heater, and the conduit was charged with the current carried by the wires inside of it. The testimony of the physicians and surgeons who performed an autopsy on the body was strongly to the point that Bushing had died from an electric shock. A claim for compensation was made by the appellee, the surviving spouse of the deceased employee. The employer denied liability, and the matter was referred to an arbitration committee, as provided by the Workmen's Compensation Law. The arbitration committee found that the death occurred at a place where the workman's employment did not require him to be, and that he was apparently doing something that he was not employed, authorized, or expected to do, and therefore denied

the surviving spouse any compensation under the terms of the law.

On June 24, 1918, a petition for review was filed, but, on account of the failure of the petitioner to furnish a transcript of the evidence before the arbitration committee, the hearing on review was delayed until August 9, 1928. On August 28, 1928, the Iowa industrial commissioner filed his order, findings, and decision, wherein the decision of the arbitration committee was reversed, and the claimant (appellee here) was granted statutory compensation for a period of 300 weeks, together with $100 for burial expenses. The employer, Iowa Railway & Light Company, appealed to the district court of Marshall County; and on October 10, 1928, the cause came on for trial, upon the transcript as certified and filed by the Iowa industrial commissioner. Thereafter, on the 8th day of December, 1928, the district court of Marshall County, Iowa, rendered and entered of record a judgment and decree which held that August Bushing came to his death on December 8, 1917, by electrocution, while in the employ of the Iowa Railway & Light Company, and that the said injury and death arose out of and in the course of his employment, and awarded the claimant compensation to the amount of $2,595, and burial costs of $100. It was further ordered that the defendant be given credit for the sum of $135 which it had voluntarily paid in connection with the burial of the deceased workman.

The case now comes to this court for final decision. The appellant relies upon seven points for reversal, and the appellee upon but one. To simplify matters, we will deal first with the appellee's count, which is as follows: The court erred in failing to allow the claimant interest on each weekly payment of $8.65 from and after January 1, 1918. The record amply shows that the delay of about 10 years in bringing the claim before the Iowa industrial commissioner was due to the failure of the claimant to perfect her petition for review of the decision of the arbitration committee, and therefore the employer-appellant should not be penalized for the delay by charging him with interest on the deferred payments.

We will now set out the errors relied upon by the appellant:

(1) The court erred in finding that the injury and death

of August Bushing arose out of and in the course of his employment, as there was no evidence in the record sustaining such finding.

(2) The record conclusively shows that there was no part of Bushing's work requiring his presence at the place where his body was found, and, there being no evidence raising an inference or presumption that his death arose out of his employment, the court erred in its finding that the death of said decedent arose out of his employment.

(3) There being no evidence in the record supporting a legitimate inference as to what the deceased workman was doing away from his place of duty, and no evidence that at the time he met his death he was engaged in any duty connected with his employment, the finding of the trial court that his injury and death arose in the course of his employment is wholly unsustained by the evidence.

(4) The most that is shown in the record is that the body of the decedent was found in the defendant's plant at a place wholly disconnected and distant from the decedent's place of work and where he had no known duty to perform.

(5) The industrial commissioner in his decision made no findings of fact upon which conclusion could be based that the death occurred in the course of decedent's employment and arose out of such employment.

(6) The decedent's going to the place where he was injured and met his death is not shown by any direct evidence to be on any mission connected with his employment, and his purpose in going to said place is wholly a matter of conjecture.

(7) The court erred in entering judgment and decree against the defendant, and such decree is not sustained by the record before the trial court.

Before taking up the errors claimed by the appellant, we call attention to the law in effect at the time this claim arose.

"The findings of fact made by the industrial commissioner within his powers shall, in the absence of fraud, be conclusive, but upon such hearing the court may confirm or set aside such order or decree of the industrial commissioner, if he finds:

" (1) That the industrial commissioner acted without or in excess of his powers; or

"(2) That the order or decree was procured by fraud; or

"(3) That the facts found by the industrial commissioner do not support the order or decree.

"(4) That there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the order or decree complained of.

"No order or decree of the industrial commissioner shall be set aside by the court upon other than the grounds just stated." Section 17, Chapter 270, Acts of the Thirty-seventh General Assembly (1917).

See Section 1453, Code of 1924.

This court has said:

"* * * the courts may not interfere with the findings of fact made by the industrial commissioner when these are supported by evidence, even though it may be thought there be error." *Pace v. Appanoose County,* 184 Iowa 498.

"This [supreme] court is limited in its review upon appeal to questions decided by the lower court." *Herbig v. Walton Auto Co.,* 186 Iowa 923.

The appellant does not seek any aid on the grounds (1) and (2) above as a cause for reversal. Does the evidence in the record support the commissioner's finding that the injury and death of Bushing arose out of and in the course of his employment by the Iowa Railway & Light Company?

Under the provisions of Section 1377, Code of 1924, there is an "implied agreement" for compensation, "for all personal injuries sustained arising out of and in the course of the employment." In Section 1421, certain definitions have been made of terms used in the Workmen's Compensation Act, and in Subdivision 6 of said section, the words, "personal injury arising out of and in the course of the employment" find definition. This phrase is defined to "include injuries to employees whose services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business." In the instant case, the employee was not engaged elsewhere than "on, in, and about the

premises'' of the employer. The injury happened during the hours of the employee's employment. It is not, in any sense, controlling that an employee, during the hours of his employment, happened to be a short distance from the actual *situs* of his work. In other words, the Compensation Act does not contemplate that an employee may not momentarily step outside of the circumference of his working place. The employee is not a mere automaton or machine set down in a particular place and required to stay there. His comfort and safety and the employer's interests are, to a greater or less degree, committed to the judgment of the employee. Under the instant facts, there is no evidence of a total departure from the course of the employment, nor an abandonment of his work by the employee.

In cases arising under the Workmen's Compensation Act, the burden of proof rests on the claimant to establish that the injury sustained by the employee was one arising out of and in the course of the employment. *Sparks v. Consolidated Ind. Coal Co.*, 195 Iowa 334; *Flint v. City of Eldon*, 191 Iowa 845. This burden is not discharged by creating an equipoise. *Griffith v. Cole Bros.*, 183 Iowa 415. The finding of the commissioner must be based on evidence, either direct or circumstantial, and the reasonable inferences that may be drawn therefrom. It cannot, however, be predicated upon conjecture, speculation, or mere surmise. *Sparks v. Consolidated Ind. Coal Co.*, supra. We said in the *Sparks* case, quoting from *Clapp's Parking Station v. Industrial Acc. Com.*, 51 Cal. App. 624 (197 Pac. 369):

'' 'It is always within the province of the court, in reviewing an award based wholly on circumstantial evidence, to determine whether there are inferences reasonably deducible from the evidence to sustain the commission's findings. The findings in such case must be based on reasonable inferences; conjecture or guesswork will not suffice.' ''

We regard the foregoing rule as well established in cases of this kind. The difficulty lies in applying it to the facts of any particular case. In the instant case, there is no direct evidence whatever as to the cause of the injury which resulted in the workman's death. It rests on circumstantial evidence and the inferences that may be drawn therefrom. If there is sufficient

evidence, with all the proper inferences legitimately to be drawn therefrom, to warrant a finding that the death resulted from injuries arising out of and in the course of the employment, then the finding will be sustained, even though, in the first instance, we might reach a different conclusion. There is no conflict in the evidence; no dispute as to the physical facts. Under the Iowa act, to justify an award, three things must be shown by the evidence, direct or circumstantial, including the reasonable presumptions and inferences drawn therefrom. These are (1) that the employee suffered an injury; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment. This court does not hold that, when an employee dies at his post of duty, a presumption arises that the death was one arising out of and in the course of the employment. This is a matter of proof, and the burden is on the claimant.

An injury occurs in the course of the employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. *Southeastern Exp. Co. v. Edmondson,* 30 Ga. App. 697 (119 S. E. 39). See, also, *Granite Sand & Gravel Co. v. Willoughby,* 70 Ind. App. 112 (123 N. E. 194); *Fairbank ·Co. v. Industrial Com.,* 285 Ill. 11 (120 N. E. 457); *Bryant v. Fissell,* 84 N. J. Law 72 (86 Atl. 458); *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682 (118 S. E. 786). An injury in the course of employment embraces all injuries received while employed in furthering the employer's business, and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work. *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. St. 480 (139 Atl. 192); *Von Ette's Case,* 223 Mass. 56 (111 N. E. 696). An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer. *Associated Employers' Reciprocal v. State Ind. Com.,* 82 Okla.

229 (200 Pac. 174) ; *McCrary v. Wolff,* 109 Neb. 796 (192 N. W. 237).

The evidence in this case is ample to show that Bushing's presence on the gallery was not in violation of any of the rules of the employer, and that, if he had desired to open or close the windows, it was his privilege to do so. An accident to an employee may arise in the course of his employment although he is not actually working at the time of the injury. *Holland-St. Louis Sugar Co. v. Shraluka,* 64 Ind. App. 545 (116 N. E. 330). There is nothing in the record which would tend to show that Bushing intended to abandon his employment, or that his presence on the gallery was for purposes other than those for which he may rightfully have gone there. We must hold, then, that the injury, whatever its cause, occurred in the course of his employment. The death was evidence enough that the injury occurred, and the record disclosed sufficient evidence that the death was caused by an electric shock. The next question is whether such injury arose out of the employment. The fact appears that there were burns on the left hand, and that those burns had the appearance of being from an extreme heat, and that, in the absence of any evidence to the contrary, the only manner in which the burns could have been caused was through an electric current. There is the further evidence that, at and near the place where the body was found, there existed a short circuit of an electric current of high voltage, which leads to a reasonable inference that the injury was caused by his coming in contact with such short-circuited electric current.

There is no conflicting evidence which would tend to show that the death was caused by any other means than by electrocution, and the only inference, then, is that such was the cause. While there is no direct evidence that Bushing did come in contact with such current, the inference to be drawn from the evidence is sufficient to decide that he did.

We have here a workman at a place where he had a right to be, and an injury occurring from a source which, by reasonable inference, was the only source which could have produced such an injury. Therefore, the question as to just what Bushing was doing at the moment he received the injury is not material to the point. In view of the record before us, we must hold that there was sufficient competent evidence to support the court's finding

that the injury did arise out of and in the course of his employment. The decision of the trial court is—*Affirmed.*

EVANS, STEVENS, MORLING, KINDIG, and WAGNER, JJ., concur.

ALBERT, C. J., and FAVILLE and GRIMM, JJ., dissent.