## OLAF BAAKEN v. NAUFFT & BERGSTROM AND ANOTHER.[1]

January 24, 1930.

No. 27,550.

Lewis, Hunt & Palmer, for relator.

F. C. Elston, for respondent employer and Liberty Mutual Insurance Company, its insurer.

HOLT, J.

Certiorari to review a decision of the industrial commission denying relator compensation for accidental injuries.

In 1927, when relator lost his hand, he was in the employ of Naufft & Bergstrom, contractors who were erecting a hospital for a railroad at Proctor, Minnesota. The circumstances of his injury were these:

[1]Reported in 228 N. W. 931.

On July 4 of that year the American Legion post of the village staged a fireworks display, and in the forenoon some men arrived to put it up near the hospital. They applied to relator, who had been directed by his employers to go to the hospital and wet down or sprinkle the cement floor that had been poured just previously, for the loan of a spade and pick to dig the necessary holes for six or eight posts on which to string the fireworks. He let them have the tools. The men without asking permission from relator or anyone else took the needed posts from the lumber scattered around the hospital or piled near. Next morning relator came to the building about the usual time for beginning the work. He examined or looked at the floor he had sprinkled the day before to see if any damage had happened to it during the celebration, replaced in the tool shed the pick and shovel he had lent the men the day before, and then suggested to Grote, another employe who had arrived, that they go up the incline, some 50 or 100 feet, where the fireworks had been set off, and bring back the lumber the men had carried off and used the day before. As they came up relator saw an unexploded bomb suspended from a wire or string between two of the posts. He testified that he deemed it necessary that this be destroyed or gotten rid of before the posts were taken up and brought back. There was a fuse eight or ten inches long hanging from the bomb. Relator asked Grote for a match. It was produced, lit, and the moment the flame touched the fuse the bomb exploded in the hand of relator, causing so severe mutilation that amputation above the wrist was necessary. The industrial commission adopted the finding of the referee "that the accident which occasioned this injury did not arise out of and in the course of his employment."

Relator challenges the finding quoted as being contrary to the uncontradicted and unimpeached credible testimony in the record. There was some dispute at the hearing whether this accident occurred during the hours of service, but in this court respondents really concede that it did so occur. It did not happen at the building being erected, but no showing was made that it was off the grounds designed to be used in connection with the erection of the

hospital and owned by the railroad. As usual in fireproof construction of such buildings a large quantity of lumber is used for forms which during the progress of the work is piled and scattered away some distance from the structure; and we are convinced that had the referee and the commission concluded to accept the testimony of relator and his fellow servant Grote to be true, that they went up to bring the lumber back when the injury happened, the men would have been engaged in or about the premises where their services were being performed or where their services required their presence as a part of such services, at the time of the injury, within the meaning of G. S. 1923 (1 Mason, 1927) § 4326(j); Simonson v. Knight, 174 Minn. 491, 219 N. W. 869.

Both relator and Grote testified that they went to the place of the accident to bring back the posts taken away from the building the day before. There was no direct contradiction of this testimony. Even though these men had no orders to bring back this lumber, they no doubt would be under the protection of the compensation law if in good faith they attempted at that time to further their masters' interest. A liberal construction of this beneficial law requires that employes have some leeway in determining what is to be done in rendering efficient service. If these men undertook to do what they might reasonably expect some foreman would direct them to do, were he present, they should not be held to have departed from the scope or bounds of the employment. Nor would relator forfeit compensation because he negligently or unwisely deemed it necessary first to destroy the bomb. State ex rel. Duluth B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912; Orcutt v. Trustees of Wesley M. E. Church, 170 Minn. 97, 212 N. W. 173; Ramczik v. Winona M. & F. Co. 174 Minn. 156, 218 N. W. 545.

This court has often stated that triers of fact are not permitted to find contrary to positive undisputed testimony which is not impeached nor inherently incredible. Second Nat. Bank v. Donald, 56 Minn. 491, 58 N. W. 269; Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904; Koppe v. Hilton & Thompson, 176 Minn. 508, 223 N. W. 787; Bauman v. Roth Downs Mfg. Co.

177 Minn. 98, 224 N. W. 459. In applying this principle regard must be had to what is to be established. In the case at bar no act was testified to which indicated that relator and Grote were engaged in bringing back the lumber. The going up and viewing the scene of the fireworks and exploding the bomb may as readily be ascribed to a desire to gratify personal curiosity as to an intention to serve the interests of their masters. From the thought expressed by relator, that in destroying the bomb he was also actuated by the desire to prevent a child from being exposed to peril therefrom, the commission may have concluded that that was the sole purpose of setting a match to it. The men knew that their employers had had nothing to do with the fireworks and were in no manner responsible for the presence of the bomb where it was found. Nor is the testimony of relator wholly unimpeached, that he undertook to bring back the lumber and in order so to do safely it was deemed expedient first to destroy the bomb, for the foreman testified that when relator came out of the hospital a few weeks after the accident and was asked how it happened, he said:

"He came over the hill that morning going to the job and there was one of them firecrackers hanging on the wire and the other man that was with him at the time that he met, they went over there, and he thought it might be dangerous for kids or somebody that come around like that, so he asked for a match and he lit it off."

Nothing was then said about going there for the lumber. The foreman was also asked:

"What was your custom, Mr. Ruslund, in starting the morning work, that is, did the men wait for your instructions or did they go ahead without your instructions?" His answer was: "No, waited for me."

No foreman had arrived when relator was injured. Ruslund further testified that the men checked in at the toolhouse and then received instructions as to what to do.

276

Under the situation revealed, the triers of fact might deem the testimony of relator and Grote inherently improbable that they of their own accord and contrary to the usual custom should embark in retrieving the lumber before the arrival of the foreman. From this and the fact that more than a year elapsed before any claim for compensation was made, the inference may arise that the intention testified to by relator for his going to where the explosion occurred was an afterthought. The burden was upon relator to prove that the accident arose out of and in the course of his employment. The burden was here augmented because of the unusual circumstances. Exploding bombs was not in line with any work for which relator was employed. He had done nothing which demonstrated that he was engaged in bringing back the posts or lumber when injured. It rested wholly in the intention expressed to Grote.

While this court as a trier of fact would not have come to the same conclusion as the commission, we think it cannot be said that relator's and Grote's testimony is so conclusive that they were engaged in retrieving their masters' property when the injury was received that the commission was bound to accept it as truth. There is some impeachment. There is some inherent improbability that men would engage in unusual work before checking in. Inferences are near at hand that personal curiosity or thoughtfulness for the safety of others were the sole motives for exploding the bomb. This court cannot overturn the finding challenged.

The decision is affirmed.

WILSON, C. J.

I dissent.