# OLGA FJELD v. MARSHALL COUNTY CO-OPERATIVE OIL ASSOCIATION.[1]

December 31, 1948.

No. 34,648.

*G. P. Mahoney* and *John S. Morrison,* for appellant.
*Sletten C. Olson* and *Dell, Rosengren & Rufer,* for respondent.

MAGNEY, JUSTICE.

Defendant appeals from an order denying its motion for judgment notwithstanding the verdict or a new trial.

Defendant operates a gasoline filling station and bulk station in Warren. Its pump house is equipped with electrically operated pumps and spouts used in the filling of tank trucks. To the north of defendant's plant is Fletcher avenue. The filling station, a 10 x 12

---

[1]Reported in 35 N. W. (2d) 448.

structure, is 67 feet directly south of the avenue. The bulk pumping station lies farther south and about 59 feet from the south side of the filling station. Between these two stations is a fuel oil pump. Along the east side of defendant's premises is First street. The distance between the easterly side of the filling station and First street is 39 feet, and the gas pumps are 18 feet closer to First street than to the station. The distance from the loading platform of the bulk pumping station to First street is 22 feet. Thus, the loading station is about in line with the gas pumps of the filling station. In the northeast corner of the property along both streets is a lawn, which extends along Fletcher avenue some 25 feet and along First street about 35 feet.

Orel H. Fjeld was employed by defendant as tank truck driver to deliver its products to its customers and also to do work as a general helper around the plant. About four o'clock in the afternoon of August 29, 1945, he returned to the plant from farm deliveries and parked his truck alongside the loading platform of the bulk station pump house. He then went into the filling station. John Nowacki, the manager, was there. William Grochow, a customer, testified that Fjeld said to Nowacki, "How about going for lunch?" and that Nowacki answered "Okey" or something to that effect. Nowacki denied this. Nowacki and Grochow then picked up some oil cans and started to walk north to cross Fletcher avenue to get some oil from a warehouse. Fjeld was then in the station. When Nowacki and Grochow arrived almost at the south line of the avenue, that is, about 65 feet from the filling station and about 25 feet from the northeast corner of the premises, they heard a cry of "fire" from Nowacki's 12-year-old son, who had started to fill the truck at the bulk station. They immediately turned around and saw flames coming out of the truck. Grochow ran toward his car, which was parked near the fuel oil pump. He says he saw Fjeld running about straight south of him toward the truck, and that Fjeld reached the bulk station about the same time that he, Grochow, reached his car. Grochow said he did not know where Fjeld came from and did not know if Fjeld was in First street when he started to run. When he first saw him, he was run-

ning in the same direction as Grochow and at an angle toward the southwest. Nowacki testified that he knew Fjeld intended to go to lunch at a lunchroom in the next block and across First street, but that at the time he and Grochow started for the warehouse Fjeld had not started for lunch. When Nowacki and Grochow left the station Fjeld was in there wiping his hands. Nowacki did not see him again until the boy yelled "fire." Fjeld was then right in front of the filling station south of the door, running south toward the truck. Ronald Nowacki, the boy, said that when he saw Fjeld the last time before the fire Fjeld was washing his hands outside the station in a little compartment. The boy was then walking toward the truck to start loading gas. When the fire started and Ronald got off the truck, he saw Fjeld running toward the truck from the filling station. Ronald did not know where Fjeld came from. The boy was then running north toward his father, and Fjeld was running in the opposite direction. Fjeld was about 15 feet away when he and Ronald passed each other. S. O. Benson, a witness for defendant, testified that he was across First street unloading ice. When the boy yelled "fire," he saw Fjeld running from the service station south toward the truck, but he could not tell whether Fjeld came from inside the station. Fjeld, when he reached the truck, went up on the loading platform and attempted to put out the fire. In doing so, his clothing was ignited and he was fatally burned.

Plaintiff, the special administratrix of the estate of Orel Fjeld, claims that the fire was caused by the negligence of defendant in failing to provide grounding wires to carry off the static electricity generated in the process of pumping the gasoline and which ignited the gasoline. Defendant contends that at the time Fjeld sustained his fatal injuries he was an employe of defendant and was then acting in the course and scope of his employment. It claims that it was duly insured under the provisions of M. S. A. 176.03, and that under the provisions of § 176.04, and the facts here, liability under the workmen's compensation act is exclusive of all other liability for the injury. Plaintiff contends that at the moment of the outbreak of the fire Fjeld was walking in the street, intending to go to a

lunchroom; that he was acting beyond the course and scope of his employment when he made his efforts to extinguish the fire and that the injury did not arise out of or in the course of his employment; and that in attempting to put out the fire he did not intervene in his capacity as an employe, but in the capacity of a stranger. The court submitted to the jury the question of negligence and whether the accident arose out of and in the course of Fjeld's employment. The jury returned a verdict for plaintiff.

Plaintiff concedes that if decedent was acting within the scope and course of his employment at the time of the accident and if the injury arose out of and in the course of his employment decedent would be covered by the workmen's compensation act and that the present action would not lie.

We have recited in detail the layout of the premises and the facts surrounding the accident. From all the testimony of the eyewitnesses, it is evident that when the boy yelled "fire" Fjeld was on defendant's premises. It is true that he intended to leave the premises for lunch in the next block, but there is no evidence and no basis for an inference that he had left the premises. Whether it would have made any difference if in fact he had come running from the street back to the truck, we need not consider. He was on his employer's premises all the time.

If Fjeld had been on the loading platform filling the tank as the boy was doing, and the gasoline had ignited as it did, and Fjeld had tried to extinguish the fire as he did, and he had been injured in so doing, as he was, it is obvious that he would have been covered by the compensation act and that this common-law action would not lie. The fact that he came running from some other part of the premises to do what he attempted to do cannot alter the situation. Fjeld was in, on, or about the premises where his services were performed.

Section 176.01, subd. 11, provides that the workmen's compensation act does not cover workmen "except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service,

at the time of the injury, and during the hours of service as such workmen;" and § 176.02 provides that "every such employer shall be liable for \* \* \* and pay compensation in every case of personal injury of his employee, caused by accident arising out of and in the course of the employee's employment without regard to the question of negligence, except \* \* \*."

Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, is the leading Minnesota case dealing with definitions of the expressions in the workmen's compensation act "injury arising out of the course of the employment" and "in the course of the employment," and it is the case most often quoted and followed. The court in that case stated that it was not attempting to give a comprehensive definition of the language so as to include or exclude cases coming under or outside of its terms, and that each case must stand on its own facts. It goes on to say (158 Minn. 498, 198 N. W. 292) :

"The injury is received 'in the course of' the employment when it comes while the employe is doing his work. It may be received 'in the course of the employment' and still have no causal connection with it. State ex rel. [Duluth B. & M. Co.] v. District Court, 129 Minn. 176, 151 N. W. 912. 'In the course of' refers to the time, place and circumstances under which the accident takes place. It may be 'in the course of the employment' and yet the employe may be standing still and not physically moving in his work. Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261. He is still included when he does those reasonable things which his contact with his employment expressly or impliedly permits him to do. It 'arises out of' the employment when it reasonably appears from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury. If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. It excludes an injury which cannot

fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the employe would have been equally exposed apart from the employment. The moving cause of danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business of the employer and not independent of the relation of employment. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

If Fjeld at the time of the accident had been operating the gasoline pump and spout which were filling the tank and if he had been injured in attempting to put out the fire, there can be no question that he would have been acting within the scope of his employment and that the injury would have arisen out of and in the course of his employment. Here, at the time the fire broke out he was on his employer's premises. His intention to leave the premises for lunch was still only an intention. The relationship of employe and employer existed. The fire—the cause of the fatal injury to Fjeld—was a potential danger peculiar to the work that was being done and was incidental to the character of the business of defendant. It had its origin in the risk connected with the employment. In doing what he did, Fjeld was no more a volunteer than if he had himself been operating the pumps when the fire broke out and he had attempted to quench it.

It is clear to us that Fjeld was acting within the scope of his employment at the time of the accident and that his injury arose out of and in the course of that employment. Certainly, if this matter had been submitted to us in proceedings under the workmen's compensation act, we would have held that Fjeld was covered by it. To us, the conclusion is inescapable.

Order reversed with directions to enter judgment for defendant.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.