## MATHIAS KRAKER v. JOHN NETT.[1]

### January 21, 1921.

### No. 22,148.

**Workmen's Compensation Act—loss of eye—actual knowledge of injury.**
The finding that the loss of plaintiff's eye resulted from an injury which arose out of and in the course of his employment, and that relator had actual knowledge of the occurrence of the injury within 90 days after it happened is sustained by the evidence.

Upon the relation of John Nett the supreme court granted its writ of certiorari directed to the district court of Stearns county and the Honorable John A. Roeser, one of the judges thereof, to review proceedings in that court under the Workmen's Compensation Act brought by Mathias Kraker, as employee, against relator, as employer. Affirmed.

*Donohue & Quigley* and *M. C. Tifft,* for relator.

*R. B. Brower* and *J. B. Himsl,* for respondent.

[1]Reported in 180 N. W. 1014.

TAYLOR, C.

This is a proceeding under the Workmen's Compensation Law. The court awarded the claimant the compensation prescribed by statute for the loss of an eye. That he lost the sight of his right eye is conceded.

The relator contends: (1) That the finding that claimant's loss of sight resulted from an injury which arose out of and in the course of his employment is not sustained by the evidence; (2) that the finding that relator had actual knowledge of the injury within 90 days after the happening thereof is not sustained by the evidence.

1. Relator operates a lumber-yard and deals in building material, including cement, at the village of Albany in Stearns county. Claimant was employed to work in the yard, and his duties included handling cement and delivering it to customers. Claimant testified that, while putting loose cement in a sack on a windy day, some of it got in his eye; that it caused pain and made the eye red; that the eye continually grew worse and more painful thereafter, although he applied various home remedies and remedies which he obtained at a drug store; that these affording no relief he consulted Doctor Watson and applied the medicine prescribed by him, and that his eye continuing to grow worse he finally consulted Doctor Whiting, an eye specialist. He first consulted Doctor Whiting about three months after the cement got in his eye. Doctor Whiting testified as to the condition of the eye when he first examined it; that he had seen the action of cement on the exposed portion of the eye in many cases; that such action is caustic and corrosive and destructive of the tissues, and that the condition in which he found claimant's eye might have resulted from getting cement into it.

The finding that the loss of the eye resulted from getting cement into it in the manner and at the time claimed by claimant is sustained by the evidence within the rule stated in State ex rel. Niessen v. District Court of Ramsey County, 142 Minn. 335, 172 N. W. 133; State ex rel. Berquist v. District Court of Beltrami County, 145 Minn. 127, 176 N. W. 165; State ex rel. Kile v. District Court, 146 Minn. 59, 177 N. W. 934, and cannot be disturbed by this court.

2. Section 8213, G. S. 1913 reads:

"Unless the employer shall have actual knowledge of the occurrence of the injury, or unless the injured workman, or a dependent, or some one in behalf of either, shall give notice thereof to the employer in writing, within fourteen (14) days after the occurrence of the injury, then no compensation shall be due until such notice is given or knowledge obtained. If the notice is given, or the knowledge obtained within thirty (30) days from the occurrence of the injury, no want, failure, or inaccuracy of a notice shall be a bar to obtaining compensation, unless the employer shall show that he was prejudiced by such want, defect or inaccuracy, and then only to the extent of such prejudice. If the notice is given, or the knowledge obtained within ninety (90) days, and if the employe, or other beneficiary, shall show that his failure to give prior notice was due to his mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation or deceit of the employer or his agent, then compensation may be allowed, unless the employer shall show that he was prejudiced by failure to receive such notice, in which case the amount of compensation shall be reduced by such sum as shall fairly represent the prejudice shown. Unless knowledge be obtained or notice given, within ninety (90) days after the occurrence of the injury, no compensation shall be allowed."

Unless the employer receives notice or obtains knowledge of the occurrence of the injury within 14 days after its occurrence, no compensation is due until he receives such notice or obtains such knowledge. If he receives notice or obtains knowledge within 30 days from the occurrence of the injury, no want, failure or inaccuracy of the notice will be a bar to compensation, unless he shows that he was prejudiced thereby, and then only to the extent of such prejudice. Unless he obtains knowledge or receives notice within 90 days after the occurrence of the injury, no compensation can be allowed. '

While claimant gave written notice of the injury, this notice was not given until nearly four months after the injury happened and was too late. Claimant does not rely on this notice, but claims that relator had actual knowledge of the occurrence of the injury within 30 days after it happened. The accident happened on or about July 26, 1919. Claimant ceased work on August 3, 1919. He went to relator for his pay on

August 5. There was a controversy as to the amount due. He had kept his time in a memorandum book and claimed that this showed $222.80 due him. He presented this book to relator and asked relator to examine it, saying that he, himself, was unable to see. He was given a check for $196 which was the amount due as claimed by relator. He apparently did not know the amount for which the check was drawn at the time it was given to him, but learned the amount when he presented it at the bank. Two or three days later, he returned and demanded $26.80 more which was refused. In the altercation which followed he stated to relator: "I lose my eye through the work and you don't want to pay me for what I have earned." He also testified that the fact that his eye was affected was plainly observable during both these interviews. He made no claim for compensation for the injury in these interviews, but it appears that he had no knowledge of the compensation law or of his rights thereunder at that time.

The statute is highly remedial in its nature and must be liberally construed to accomplish the purpose for which it was enacted. State ex rel. Casualty Co. v. District Court of Blue Earth County, 133 Minn. 439, 158 N. W. 700. It provides for a quick, summary and informal disposition of such claims, and manifests an intention throughout to do away with technicalities. If the employer actually receives information of the occurrence of the injury, it is sufficient, and the form or manner in which he receives such information is not material.

It was pointed out in State ex rel. Niessen v. District Court of Ramsey County, 142 Minn. 335, 172 N. W. 133, that the review, in this court, of proceedings under the compensation law is limited by the act to a review of questions of law, and that, where reasonable minds might draw different conclusions from the evidence, the question to be determined is a question of fact and not of law. The evidence brings the question whether relator had actual knowledge of the occurrence of the injury within this rule and the finding of the trial court cannot be disturbed.

Judgment affirmed.