## EMMA HARRIS v. J. H. KAUL.[1]

July 8, 1921.

No. 22,413.

**Workmen's Compensation Act — injury to teamster not in course of his employment.**

1. A teamster who, in a fit of anger, beats one of the horses he is employed to care for .and drive, his anger being provoked by a cause wholly foreign to the employment, is not entitled to compensation under the Workmen's Compensation Act, if injured by a kick from the horse when he is so beating it.

**Judge's memorandum not equivalent to specific finding.**

2. Neither the evidence nor the findings show that, when he was kicked, the workman was in the act of cleaning the horse. A statement that he was, found only in the trial judge's memorandum, is not the equivalent of a specific finding that such was the fact.

Upon the relation of Emma Harris the supreme court granted its writ of certiorari directed to the district court for Rice county and the Honorable Arthur B. Childress, judge thereof, to review proceedings in that court brought under the Workmen's Compensation Act by relator, widow of Fred Harris, employe, against J. H. Kaul, employer. Affirmed.

*Lucius Smith* and *Moonan & Moonan,* for relator.

*James P. McMahon* and *George S. Grimes,* for respondent.

[1]Reported in 183 N. W. 828.

Lees, C.

This is a proceeding under the Workmen's Compensation Act, brought by the widow of Fred Harris, a teamster who was fatally injured by a kick from one of his employer's horses. The findings of the district court were that on the morning of May 4, 1920, Harris went to his employer's barn to care for, clean and harness the team he drove. He owned and used a blacksnake whip. One of the team, a mare named Maud, was quietly standing in her stall and feeding. Harris, without provocation or excuse, maliciously and violently beat her with the whip, standing near her hind feet as he did so. The mare became frightened and frenzied with pain as a result of the whipping and kicked Harris in the abdomen, so injuring him that he died on the following day. The mare was gentle, though a nervous animal, and had never kicked anyone before. Harris' injury did not arise out of and in the course of his employment. The conclusion was that the proceeding should be dismissed. Judgment was entered on the findings and Mrs. Harris sued out a writ of certiorari, bringing the record here for review.

Counsel for relator are correct in stating that the only question presented is whether Harris' death was caused by an injury which arose out of and in the course of his employment. There is an allegation of wilful negligence in the answer, but we have disregarded it, assuming, for the purposes of this decision, that relator is right in asserting that under our statute wilful negligence is not a defense. We note relator's emphatic assertion that Harris was actually engaged in cleaning the mare when she kicked him. We have been unable, however, to find in the record a concession by respondent, or either conclusive proof or a finding that he was in fact so engaged at the time of the injury.

Joseph Roehick was the only eyewitness of the accident. He testified for respondent. In substance this is what he related: He went to respondent's barn at 6 in the morning and fed the horses. There were three teams. Harris was the driver of one of them. It was his duty to clean and harness his team. He owned a blacksnake whip and kept it at the barn. He used it in driving his team. When he entered the barn, he took a brush and curry-comb in one hand and the whip in the other and began to beat the mare with the whip. He beat her for about a minute. She was feeding in her stall when he began to do so and

crowded forward when she was struck. The witness told Harris to stop and he threw the whip on the floor behind the mare, and at that instant she kicked him. Surely this testimony falls short of showing conclusively that Harris was actually engaged in cleaning the mare when he was kicked. In a memorandum, the trial judge said: "It appears that he (deceased) was in the act of cleaning the horse 'Maud', but I don't think under the facts in this case, that it was any part of his duties to whip the horse in the manner in which he did, and, therefore, that his injuries did not arise out of his employment." This statement, not made or included in the findings, is not the equivalent of a specific finding that when injured Harris was in the act of cleaning the mare. Fletcher v. Southern C. Co. 148 Minn. 143, 181 N. W. 205.

On reverting to the ultimate question in the case relator encounters the specific finding that Harris' injury did not arise out of and in the course of his employment. This finding must be sustained under the rule formulated by the Chief Justice in State ex rel. Niessen v. District Court of Ramsey County, 142 Minn. 335, 172 N. W. 133, and applied in many subsequent cases. State ex rel. Green v. District Court of Ramsey County, 145 Minn. 96, 176 N. W. 155; State ex rel. Berquist v. District Court of Beltrami County, 145 Minn. 127, 176 N. W. 165; State ex rel Johnson v. District Court of Carver County, 145 Minn. 444, 177 N. W. 644; State ex rel. Kile v. District Court of Hennepin County, 146 Minn. 59, 177 N. W. 934; State ex rel. Taylor v. District Court of Ramsey County, 147 Minn. 10, 179 N. W. 217; Kraker v. Nett, 148 Minn. 139, 180 N. W. 1014.

Beyond referring to what has been said in State ex rel. Duluth B. & M. Co. v. District Court of St. Louis County, 129 Minn. 176, 151 N. W. 912; State ex rel. Johnson v. District Court, Hennepin County, 140 Minn. 75, 167 N. W. 283, L.R.A. 1918E, 502, and Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622, we do not attempt to define the phrase "accident arising out of and in the course of employment." It has not heretofore seemed wise to formulate an all-inclusive definition. State ex rel. Peoples C. & I. Co. v. District Court of Ramsey County, 129 Minn. 502, 153 N. W. 119, L.R.A. 1916A, 344. It is doubtful whether anything can be said that would help to make clearer the meaning of the language used in the statute. The phrase occurs not only in our own act

but in the English act and the acts of many of the states as well. It has been said of it, that it admits of an inexhaustible variety of application according to the nature of the employment and the character of the facts proved. We are mindful of the rule that the act is to be liberally construed in favor of workmen. Nevertheless, we see no escape from the conclusion that the vital finding against relator cannot be disturbed. Roehick testified that Harris was angry when he came to the barn, saying his wife had stayed out late and had not prepared his breakfast for him and then immediately began to beat the mare. Surely a workman is not serving his employer in beating a horse he is hired to care for and drive, if the only reason for his doing so is to give vent to his wrath. If the animal had provoked him while he was caring for or driving it and he had whipped it, the situation would be quite different.

It is true that Harris was injured when he was on his employer's premises, where his services required his presence and during his hours of service, but these facts alone do not entitle relator to compensation. A workman, injured at a time when he is at liberty from the service and pursuing his own ends exclusively, or when, after beginning work, he has stepped aside from his employment to do an act in no way connected therewith, is outside of the employment, for the reason that the relation of master and servant is for the time suspended. Morier v. St. Paul, M. & M. Ry. Co. 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793. If Harris had come to the barn in an ill humor, and, to relieve his pent-up anger, had attacked Roehick, who, in defending himself, had struck and injured his assailant, it could not be contended with any show of reason that compensation should be awarded. We see no difference between the case supposed and the case actually presented. Dumb beasts, as well as men, will use their natural means of defense when violently attacked, no way of escape being open to them.

We have not overlooked the many cases cited by relator as apposite, in which it was held that a workman injured in an altercation with a fellow workman or a stranger was entitled to compensation. We find that in all such cases the altercation was in some way connected with the employer's work or came to pass while the employe was serving the employer's interest. Clark v. Clark, 189 Mich. 652, 155 N. W. 507, illustrates the distinction between the cases relied on and the case at bar.

A number of the cases cited were analyzed by Justice Hallam in Hinchuk v. Swift & Co. supra, followed by a concise statement of the principle derived from them, namely, a causal relation between the employment and the injury must exist to bring a case within the statute. We think there is a distinction between doing recklessly and maliciously the thing a workman is employed to do and doing the same thing outside and disconnected from his employment. If an accident happens in the first instance, the workman may be entitled to compensation, but not in the last instance.

The judgment is affirmed.