Before State Industrial Board, Respondent.

In the Matter of the Claim of Edward F. Doherty, Respondent, for Compensation under the Workmen's Compensation Law, *v.* David Lupton Company, Employer, and Ætna Life Insurance Company, Insurance Carrier, Appellants.

Third Department, November 15, 1922.

Workmen's Compensation Law — claim for injury to eye alleged to have been caused by cement rubbed in eye — notice of injury — failure to give notice properly excused where manager and superintendent of employer had knowledge — injury arose out of and in course of employment — evidence sustains finding that cement contained substance which would cause injury.

The failure of the claimant to give notice of the injury within the time prescribed by the Workmen's Compensation Law was properly excused by the State Industrial Board, since it appears that he reported his condition to the superintendent of his employer on the day of the injury and that the superintendent conveyed that information to the manager within two or three days after the accident.

The claimant was engaged with men who were placing plate glass windows, and while so engaged some black cement used in the work got upon his hands and in rubbing his face with his hands during the heat of the day some of the cement

got into his eyes, which became inflamed. *Held,* that the injury was accidental and arose out of and in the course of his employment, and that the evidence justified the finding that the injury was caused by the cement.

APPEAL by the defendants, David Lupton Company and another, from a decision and award of the State Industrial Board, made on the 10th day of February, 1922.

*William H. Foster,* for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

Claimant was working for the David Lupton Company, engaged in the business of constructing iron and placing plate glass windows. These windows were embedded or fixed in place with a black substance like cement. While taking this substance from the barrels it was scattered upon the floor, got upon the feet of the men, and in turn upon the rungs of the ladders being used. The claimant, while carrying water to the men, got this black substance upon his hands, and, in rubbing his face with his hands, during the heat of the day, the substance got in the eyes, which became inflamed. Claimant testifies that he never had trouble with his eyes before and never wore glasses. Since the injury he has not been able to do work, because he could not see.

At the first hearing the defendants objected to the award, *first,* on the ground of delayed notice; and *second,* on the ground that claimant did not sustain an accident in the course of his employment; that such eye trouble as he has was not due to any accident during his employment.

He stopped work about August 27, 1920. He got the paste in his eyes about August twenty-fourth or twenty-fifth. His claim is dated the 8th day of June, 1921. He reported his condition to the superintendent, Callahan, "right afterwards, that day," and Callahan told him to go to the first aid. Callahan testifies that he saw the claimant rubbing his eyes and that his eyes were all inflamed; the next day his eyes were worse; that he told the manager "I don't think much of it [the paste]; we have one man in the hospital now with it; the water-boy, in going up the ladder, got it on his hands and rubbed it in his eyes." This evidence disposes of the first objection. The superintendent and the manager were informed of the claimant's condition within two or three days after the accident. This was notice to the employer. The Industrial Board was justified in excusing failure to give the formal notice within the time. (See Workmen's Compensation Law, § 18, as amd. by Laws of 1918, chap. 634.)

Third Department, November, 1922.                     [Vol. 203

Getting the black cement in his eyes was accidental and arose out of and in the course of his employment. But the defendants urge that there is still a defect in the proof in that there is no evidence that there was any substance in this black cement which could have caused the condition from which the claimant was suffering; that there must be proof of each element of an accidental injury resulting out of and in the course of his employment, independently of any statutory presumption, before a claim may be allowed, citing *Russo* v. *Jarvis Stores, Inc.* (193 App. Div. 587); *Minerly* v. *Kingsbury Const. Co.* (191 id. 618); *Matter of Woodruff* v. *Howes Const. Co.* (228 N. Y. 276); *Matter of Eldridge* v. *Endicott, Johnson & Co.* (Id. 21). We think that where it is established, as in this case, that this man, whose eyes were at all times before healthy, did rub some of this black cement into his eyes and directly thereafter his eyes became inflamed and this condition continued until he became blind in his right eye, there is some evidence that the infection of the eyes and the resulting blindness were caused by this foreign substance; that it contained one or more ingredients that do cause such infection. The condition from which he suffers is not due to a constitutional disease, but is due to an infection. Dr. Conboy, who is a specialist in diseases of the eye, examined the claimant on November 11, 1921, more than a year after the injury. He found the right eye practically blind. In reply to an hypothetical question which recited the facts of the accident substantially as above stated, and concluded, " Would you say with reasonable certainty that the mortar that he got in his eye on that day, at work August, 1920, could be the possible cause to such an injury to his eye? " he answered, " If that mortar contained any caustic, it could." He testified further that this condition might develop in two or three days or in a month after the primal cause of it had been suffered; there are different degrees of caustic, any of which they might have used in this preparation; " it does not take much of a caustic to procure a second degree burning." The referee referred to the testimony of Frank Callahan, the substance of which has been above quoted, and asked the doctor, " From that statement of the superintendent of the company as to the method in which the alleged accident occurred, are you able to state whether that condition of work and getting this substance in his eye, whatever it was, would have caused the condition? A. It would. Q. Your answer is, it would? A. Yes sir. * * * Q. If it is true as he says, would you say that this substance must have contained something that had an infection or caused an infection to the eye or had a germ or caustic substance in it? A. It did." Dr. Mehl's testimony is in some respects in conflict with

this, but the State Industrial Board has accepted the testimony of Dr. Conboy.

In *Matter of Eldridge* v. *Endicott, Johnson & Co. (supra)*, much relied upon, the evidence is quite different. In that case, in November, 1915, while being shaved in a barber shop, the deceased received a cut upon his neck. After the cut healed, a pimple appeared. The wife broke this with a needle and applied a poultice to it on November seventeenth. The definition of anthrax in Webster's Dictionary is quoted: " An infectious, and usually fatal, bacterial disease of animals, especially cattle and sheep, and occasionally of man, to whom it may be transmitted by inoculation." There was no proof that anything came in contact with the cut or pimple while Eldridge was at work, or that the hides had anthrax germs, or in what manner it may be transmitted, or that a person working about the hides with an open wound is likely to receive the germ. His neck was swollen during the first day he returned to work. The infection could have been received in the barber shop, or while the cut was open, or after the pimple was opened and before he returned to his work. That he received it during his work from handling the hides the court held was mere supposition, without proof.

In this case we think the evidence justified the finding that the injury was due to the accident, and the award should be affirmed, with costs.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Award unanimously affirmed, with costs in favor of the State Industrial Board.