## ALFRED W. SCHONBERG v. ZINSMASTER BAKING COMPANY.[1]

January 27, 1928.

No. 26,273.

**Relator's right of control over respondent negatived latter's being an independent contractor.**

1. Facts establish relationship of employer and employe. Control and right of control by relator negative relationship of independent contractor.

**Under the circumstances test made was necessary.**

2. Work in connection with testing of aeroplane used in employer's service, under the conditions existing, *held* to be necessary and proper and within scope of employment.

**Statutory notice by employer necessary to start running of statute of limitations.**

3. Notice provided in L. 1919, c. 363, must be given by employer in order to start running of statute of limitations therein provided for. Notice of the accident and injury given to the commissioner of labor by the employe does not put the statute in operation.

Workmen's Compensation Acts—C. J. p. 50 n. 63; p. 80 n. 25; p. 104 n. 27.

See note in 19 A. L. R. 226.
See 16 A. L. R. 462; 4 R. C. L. Supp. 1151.

Certiorari to review a judgment of the district court for Hennepin county, Salmon, J. awarding compensation in a proceeding under the workmen's compensation act. Affirmed.

*Denegre, McDermott, Stearns & Stone,* for relator.

*L. A. Door,* for respondent.

HILTON, J.

This case arises under the workmen's compensation act in force on October 9, 1920, the date of the accident involved. Action was

[1]Reported in 217 N. W. 491.

commenced in November, 1925, more than five years after the accident. L. 1921, p. 90, c. 82, became operative June 1, 1921, and expressly provided in § 68 thereof that "all rights and liabilities arising on account of accidents or injuries occurring prior to the taking effect of this act shall be governed by the then existing law." This court issued its writ of certiorari, addressed to the district court of Hennepin county, to review a judgment entered therein awarding respondent $15 per week for a period of 100 weeks, beginning October 16, 1920, on account of a permanent partial disability consisting of the loss of one eye. This award, with interest thereon, and costs and disbursements, made a total of $2,103.62. There is no contention on the part of the relator that the amount allowed is incorrect if there be liability.

Relator presents 11 assignments of error, which raise the following questions:

1. Was respondent an independent contractor and not subject to the provisions of the Minnesota workmen's compensation act?

2. Was respondent's employment casual and not in the usual course of the trade, business, profession or occupation of the relator?

3. Did the accident to respondent arise out of and in the course of his employment?

4. Was the action commenced within the limitation provided by statute?

5. Did respondent prove that he sustained the loss of an eye by reason of his accident?

Relator (Zinsmaster Baking Company), with its principal place of business in St. Paul, Minnesota, is a corporation engaged in the business of making and selling bread. In May, 1920, it employed respondent (Schonberg) in its sales department and paid him at the rate of $40 per week and expenses. Respondent covered his territory by automobile until in August, 1920, when an aeroplane was obtained and used by respondent in the business of selling bread and advertising and promoting such sales for relator. On September 1, 1920, the terms of the oral agreement theretofore made were reduced to writing in the following contract:

"St. Paul, Minn.

"September 1, 1920.

"Zinsmaster Baking Company,

"St. Paul, Minn.

"Dear Sir: Attention: Mr. Jay Odell

"In consideration of the $500.00 that was advanced to me by the above company, I hereby agree to render to this company the following services with my aeroplane:

"1: To carry 100 grocers up in my plane free of charge for not less than ten minutes per flight, these grocers to be designated and time to be specified by Mr. Jay Odell of the above company.

"2: I also agree to distribute sample loaves of bread and circulars from my plane at the Minnesota State fair and surrounding towns of St. Paul.

"3: These flights, as designated in items 1 and 2, are to be made within the next 60 days.

"When this agreement is carried out as designated above and O. K'd by Mr. Odell the attached note is automatically cancelled.

"I also agree to remain in the services for 90 days of the Zinsmaster Baking Company at a salary of $40.00 per week with allowance of not over my regular past weekly traveling expense, which will be used to help defray the expense on the aeroplane, $35.00 per week.

"My duties in connection with the Zinsmaster Baking Company will be to make the small towns around St. Paul in my aeroplane, soliciting business for the above Company. I reserve, however, the right outside of regular business hours to carry passengers up in my plane grocers and grocer clerks excluded and charge them as I see fit. All money for these flights collected from these passengers is to be retained by myself.

(Signed) "A. W. Schonberg.

(Signed) "Jay A. Odell,

"Sales Manager."

Respondent claims that relator was a part owner of and thus interested in the aeroplane, and that the relator was to pay for the

expenses of operation and repairs, all of which relator denies. A determination as to the interests of the respective parties in the aeroplane or as to the payment of expenses of operation and repairs is not necessary for a decision in this case.

Using the aeroplane, respondent did advertise the business of relator by distributing circulars and miniature loaves of bread therefrom and did carry up grocers therein in various localities of the state as and when directed by the relator. A minor accident to the plane occurred shortly after September 1, 1920, at Braham, a small town in Minnesota. Respondent was directed by Odell, sales manager for relator, to have the plane fixed. It was taken to the Security Flying Field in Minneapolis and there repaired, at least with the knowledge and approval of relator.

On October 9, 1920, from the flying field referred to, eight grocers were each given a ride in the plane and advertising matter distributed therefrom. Odell brought the grocers to the field on that day and gave instructions. These flying trips with grocers on that day ended about 4:30 o'clock in the afternoon.

Not being a licensed pilot himself, respondent furnished his own pilot. After the landing of the last grocer carried up on that day respondent requested his pilot to go up again with him, but he declined to do so because he was tired. Respondent then secured a man by the name of W. A. Butters, an official flying tester at the field in the employ of Security Aero-Craft Company, to take the plane up. Respondent testified that he had been told by his own pilot that the plane was out of order and for that reason he asked Mr. Butters to test the machine to see whether it was in perfect flying condition. Butters' claim is that he was to take respondent up in the plane in order that he might tell him what kind of a plane he had. After rising in the air about 800 feet the plane became unmanageable and fell to the ground. The injuries suffered by respondent as a result of the accident consisted of a crushed face, broken nose, fractured skull and loss of an eye.

The district judge found that on the date of the accident the respondent was engaged in the regular course of his employment by relator and received the injuries complained of, including the loss

of his right eye; that when injured respondent was an employe of relator and was not engaged in working for relator as an independent contractor; that respondent sustained said injuries out of and in the course of his employment; that the action was brought within the period of limitation provided by law.

We are of the opinion that the findings of the trial court are sufficiently supported by the evidence and are therefore not to be disturbed.

Relator had the right to exercise and did exercise such control over the acts of respondent as clearly to establish the relationship of employer and employe, and this relationship existed at the time the accident occurred.

Sales Manager Odell, testifying for relator, stated:

"He [respondent] was to carry an advertising program in this aeroplane, an advertising and selling program. We routed him over a certain itinerary throughout the state, flying over cities and small towns, dropping advertising and, as he has testified, consisting of small loaves of bread and pamphlets and in addition to that, he was to continue in his duties as salesman. After the advertising plan was consummated he was then to descend and call on the trade, soliciting bread business and also was expected to carry up certain grocers, principally in the city of St. Paul, grocer customers of the Zinsmaster Baking Company, for which he was to receive a credit on this contract."

Respondent reported to the sales manager several times a week by telephone, mail or in person.

The control or right of control is an all important factor to be considered in determining the question as to whether the relationship is that of an independent contractor or that of employer and employe. Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49.

On October 9 the plane was used in carrying up grocers and distributing advertising matter as directed by relator. Respondent carried up no passengers of his own on that day. The testing of

the plane, for the purpose of ascertaining whether it was in condition for use, and the securing of advice and assistance from an expert were proper precautions to take under the circumstances. It was to the interests of the relator that the plane be kept in serviceable condition. The mishap to the plane indicates its unserviceable condition and the necessity for a test.

The plane was at the Security Flying Field, where its operations were directed by relator. The facts in this case are clearly distinguishable from those in State ex rel. Jacobson v. District Court, 144 Minn. 259, 175 N. W. 110.

The evidence sufficiently shows that the loss of an eye was a result of the accident.

This leaves then only the question as to whether or not the action was commenced within the time limited by the statute. L. 1919, p. 387, c. 363, provides as follows:

"The time within which the following acts shall be performed under part 2 of this act shall be limited to the following periods respectively:

"(1)   Actions or proceedings by an injured employe to determine or recover compensation; one year after the employer has made written report of the injury to the commissioner of labor of the state."

Were it not for this provision, the six-year limitation for the commencement of actions would control.

The employer (relator) made no report whatever to the commissioner of labor. The respondent however did go to the office of the commissioner of labor and reported the accident and made a statement in regard thereto.

The language of the above quoted statute is plain and unambiguous. It speaks for itself and requires no interpretation. Had the legislature intended that information as to an accident, if brought to the commissioner of labor from any source whatever, would be sufficient to start the running of the statute, it could easily have said so. Manifestly the statute was enacted for the benefit of the employer, and provides a simple manner in which he

may avail himself of it. He cannot take a chance by neglecting to do so and then claim a benefit from it. This is true, even without invoking the universal holding that the workmen's compensation act should be construed liberally in favor of the employe.

Affirmed.

STONE, J. took no part.