## CHRISTIAN P. LARSON v. DULUTH WOOLEN COMPANY AND ANOTHER.[1]

October 31, 1930.

No. 28,003.

*Lewis, Hunt & Palmer,* for relators.
*Charles E. Adams,* for respondent.

HILTON, J.
Certiorari to review the decision of the industrial commission awarding respondent compensation for accidental injuries.

[1]Reported in 232 N. W. 915.

On March 3, 1928, C. P. Larson (respondent) and the Duluth Woolen Company (hereinafter referred to as the company) entered into a written contract by the terms of which Larson agreed to secure salesmen and solicit sales of merchandise for the company. The business of the company was the sale and distribution of men's and women's wearing apparel to consumers through the medium of local salesmen who took written orders therefor. Respondent had the states of Minnesota and Iowa in which to procure salesmen and sell goods. His remuneration was in the form of commissions. He received 25 per cent commission on all his own sales and five per cent on all sales made by salesmen procured by him or who were turned over to him by the company.

The contract was mutually terminable on 30 days' notice in writing. It provided however that in case it was voluntarily terminated by Larson he would forfeit commissions accruing during the balance of the contract term. The contract was not artistically drawn. Its provisions must be examined in their entirety and full force and effect given, so far as possible, to the whole thereof for the purpose of ascertaining its true intent.

Although not controlling, it is to be noted that the acts that Larson was to perform were called "services." Such services did not consist entirely in selling goods, appointing agents, and securing bonds from them, but also contemplated and covered supervision by him of such agents. He was referred to as "sales supervisor" and was to "devote his entire time and best efforts in building up" a sales organization for the company. There is nothing in the contract that indicates a waiver by the company of the right to control Larson's activities in organizing a sales force and supervising it. Numerous letters were written to him by the company in which directions were given him and with which he complied. In one letter he was asked to be more careful in appointing agents. The circumstance that those letters did not peremptorily order him to do the things specified therein but suggested to him in a polite way that they should be done is of no moment.

All of his time was to be and was devoted to the work except during an interval of eight days when he visited relatives in Illi-

nois. He furnished his own automobile, paid the costs of its operation, and all other incidental expenses. At the direction of the company, Larson checked up on the agents, took back samples and sample cases when necessary, and acted generally as the field supervisor. The prices at which the goods could be sold to customers by Larson or the agents under him were fixed by the company and could not be deviated from.

On October 1, 1928, Larson visited the offices of the company and conferred with the general sales manager regarding business affairs and particularly relative to checking up on the salesman at Rutledge. In the furtherance of that purpose Larson drove toward Rutledge and at 6:45 p. m. of that day, through no fault of his own, his car collided with a mower being driven on the highway by a farmer. The accident arose out of and in the course of Larson's employment.

As a result of the accident Larson received various injuries, including the destruction of the sight of his left eye, which had theretofore been in good condition. The efficiency of his right eye, which theretofore had only 20 per cent vision, was decreased to 10 per cent vision.

The claim of the company and its corelator was that Larson was an independent contractor and not an employe. The referee held to the contrary, awarding compensation, and his action was confirmed by the unanimous vote of the commission.

A test for determining whether Larson was an employe or an independent contractor is: Did the company have the right to control his activities? If it had such right the general rule is that Larson was an employe. Taking into consideration the written contract itself and the acts and doings of the parties thereunder, we hold that the company had such right, exercised it, and never relinquished it. The fact that his remuneration was a certain percentage of the amount received from sales made by him and by the subagents does not alter the situation. Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210

N. W. 1004; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313; Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327; Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49; Krause v. Bodin, 172 Minn. 467, 215 N. W. 838; Schonberg v. Zinsmaster B. Co. 173 Minn. 414, 217 N. W. 491; Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608; Lampi v. Koponen, 178 Minn. 133, 226 N. W. 475; 6 Dunnell, Minn. Dig. (2 ed.) § 10395, and cases cited. Larson was entitled to compensation and the award was proper.

■ Larson gave the company no written notice of his injury and did not request it to furnish him with medical attention and hospital care. He secured them for himself at the necessary expense of $821.03. There is no dispute as to the nature and extent of his injuries or as to the amount of compensation awarded if he was entitled to any. The company through information furnished to those in authority was aware of the accident and as to when, where, and how it happened. It is not necessary to recite the details of such communication. The referee and commission held that sufficient notice had been given, and such holding was justified. G. S. 1923 (1 Mason, 1927) § 4280; Kraker v. Nett, 148 Minn. 139, 180 N. W. 1014.

The decision of the commission is affirmed; attorney's fees of $100 are allowed the respondent.

Affirmed.