(No. 5869. February 27, 1933.)

CHARLES EDWARD COOPER, Employee, Respondent, v. INDEPENDENT TRANSFER & STORAGE COM-PANY, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[19 Pac. (2d) 1057.]

Carl H. Swanstrom, for Appellants.

Freehafer & McClure, for Respondent.

BUDGE, C. J.—Respondent, Charles Edward Cooper, a former employee of Independent Transfer & Storage Co., a copartnership, instituted proceedings before the Industrial Accident Board for compensation on account of injuries alleged to have been sustained by him on February 20, 1931, arising out of and in the course of his employment. A hearing was. had before the Industrial Accident Board, which made the following findings of fact with reference to said injury:

That on the twentieth day of February, 1931, respondent, together with James W. Stanton, one of his employers, lifted an electric transformer weighing approximately 700 pounds; that it was necessary to lift said transformer a

distance of approximately six to eight inches, and to lift it straight up without tilting; that at that time both he and his employer lifted to the utmost, and the claimant felt considerable strain and remarked to his employer that he felt the bones in his back "just grind" and at that time he and his employer compared that "lift" with other "lifts", that the claimant thereafter continued his regular work for his said employers until the third day of April, 1931; that commencing with and during approximately six weeks prior to the time he ceased work for said employers, namely, on April 3, 1931, the claimant commenced to experience pain in his back, which pain bothered him and increased in severity and he had difficulty in getting out of the school bus after his run was made and had some pain in his legs, and that his condition, due to his backache, became such that his employers noticed that he was not as active as he had been; that believing it was only the ordinary backache and strain frequently suffered and experienced by men in that business, neither the claimant nor his employers paid any particular attention to it; that on or about the seventh day of April, 1931, he attempted to do some manual work but on account of the condition of his back was not able; that from said seventh day of April, 1931, until the day of the hearing he has been totally disabled for work on account of his back condition; that the back condition which is the cause of claimant's total disability for work, as above said, is the result of his frequent lifting, loading and straining at heavy objects in the course of his work with the defendants Independent Transfer & Storage Co. and particularly of the lift and strain he made on the twentieth day of February, 1931, and is a personal injury by accident arising out of and in the course of his employment with Independent Transfer & Storage Co.

The board further found (Finding IX) that at no time prior to the twentieth day of June, 1931, did claimant make any claim for compensation or give to his employers or either of them a notice in writing signed by him or by someone else in his behalf, stating the nature and cause of

his injury or any notice at all of an injury sustained by him, or gave his employers or either of them any opportunity to provide him with reasonable medical or surgical attention, nor did either of said employers have any knowledge that claimant had sustained or claimed to have sustained a personal injury by accident arising out of and in the course of his employment until they received the written notice and claim filed on June 20, 1931, with the Industrial Accident Board, and that claimant did not affirmatively show that his employers had not been prejudiced by such delay or want of notice. Upon such findings the board entered its order denying respondent compensation.

Upon appeal, the district court adopted the findings of the Industrial Accident Board with the exception of its Finding IX. The district court in its Finding IX found as follows:

"That the claimant, Charles Edward Cooper, at no time prior to the 20th day of June, 1931, made a claim for compensation or gave to the defendants above named, or either of them a notice in writing signed by him, or by someone else in his behalf, stating in ordinary language the time, place, nature and cause of his injury, but that claimant's employer had knowledge of the accident as described in the foregoing paragraphs, and that the employer has not been prejudiced by want of written notice or by delay in giving such written notice."

In other words, both the Industrial Accident Board and the district court found as a fact that respondent suffered an accidental injury growing out of and in the course of his employment. The board, however, found as a fact that respondent had failed to give the statutory notice within the statutory time and had failed to establish by competent evidence that his employers were not prejudiced by failure or delay in giving notice, while, on the other hand, the district court found that respondent had brought himself within the provisions of I. C. A., sec. 43–1205, in that he had shown by sufficient competent evidence that his employers had knowledge of the accident and injury within the

spirit and meaning of that section, and awarded compensation.

This appeal is from the judgment of the district court awarding compensation to respondent and reversing the order of the Industrial Accident Board denying compensation.

■ As we view it, there are two specifications of error that are determinative of the questions involved herein. The first question is: Did the district court err in making and entering its Finding IX? If the record sustains this finding that appellants on and subsequent to February 20, 1931, had knowledge of the accident and the injury resulting therefrom, the judgment must be upheld and the finding of fact to the contrary by the Industrial Accident Board was properly set aside.

The following rules have been announced in connection with the question of knowledge of an employer of an accident and injury sustained by an employee:

In *Walkden's Case*, 237 Mass. 115, 129 N. E. 396, 397, it was said:

"It is settled by *Brown's Case*, 228 Mass. 31, 116 N. E. 897 and *Murphy's Case*, 226 Mass. 60, 115 N. E. 40, that because knowledge on the part of the employer is a substitute for the written notice the employer must have knowledge within the time when the written notice should have been given. The word 'knowledge' is used in the statute in its ordinary sense as meaning actual knowledge, but not absolute certainty. While notice of what has happened is not actual knowledge that the employee has been injured, it is such information as men usually act upon in ordinary human affairs. 'Intelligible information of a fact, either verbally or in writing, and coming from a source which a party ought to give heed to, is generally considered as notice of it, except in cases where particular forms are necessary.' *George v. Kent*, 7 Allen (Mass.), 16, 18."

Also it was said in *Allen v. City of Millville*, 87 N. J. L. 356, 95 Atl. 130:

"The next question is whether Kates had actual knowledge. He did not in the sense that he saw the injury and knew of it first hand, so that he could properly testify as a witness. We think, in spite of the use of the word 'actual' to qualify the knowledge required, that first-hand personal knowledge is not what is meant."

In *Frank Martin-Laskin Co. v. Goetsch Industrial Commission*, 172 Wis. 548, 179 N. W. 740, the court said:

"We are therefore of the opinion that, where the employer has notice that an accident has happened, and that some injury, no matter how trifling, has resulted to an employe by reason thereof, he has the knowledge that it was intended should be brought home to him by the service of the written notice. Of course, it must be understood that the nature of the injury should be described as fairly as possible under the facts and circumstances existing at the time the notice is given."

The court, in *Bates & Rogers Const. Co. v. Emmons*, 205 Ky. 21, 265 S. W. 447, made the following statement:

"But notice of a physical injury carries with it notice of all those things which may reasonably be anticipated to result from it."

In discussing the question of knowledge the court in *Marshall Field & Co. v. Dunlap (Industrial Commission)* 305 Ill. 34, 137 N. E. 121, 123, says:

"No notice which could have been given would have furnished the employer with fuller knowledge of the facts and circumstances than it possessed the day after the accident. It did not know the disastrous results which were to follow and no notice could have furnished it with such knowledge. It had knowledge of all the details connected with the accident, and in such case the employer is not relieved from liability even if technically it had not been given a notice by the injured employee."

See, also, *Hartford Acc. & Indem. Co. v. Industrial Commission*, 64 Utah, 176, 228 Pac. 753; *Oklahoma Gas & Electric Co. v. Thomas*, 116 Okl. 67, 241 Pac. 820; *Franks v.*

*Carpenter*, 192 Iowa, 1398, 186 N. W. 647; *Lapan's Case*, 237 Mass. 340, 129 N. E. 607; *Kraker v. Nett*, 148 Minn. 139, 180 N. W. 1014; *Burke v. Michigan Stamping Co.*, 223 Mich. 495, 194 N. W. 408; *Johnson v. Ford Motor Co.*, 240 Mich. 316, 215 N. W. 310; *Doherty v. David Lupton Co.*, 203 App. Div. 378, 196 N. Y. Supp. 829; *Ex parte Stith Coal Co.*, 213 Ala. 399, 104 So. 756; *American Radiator Co. v. Andino*, 217 Ala. 424, 116 So. 121.

The question therefore arises: Did the employers or either of them have knowledge of the accident and the injury within the time fixed by statute as to when the notice should be given, or did the respondent satisfy the burden of proof so as to bring him within the provisions of the statute heretofore referred to?

Respondent testified, among other things, that on February 20, 1931, James W. Stanton, one of the employers, was present and assisted him in lifting or raising the transformer to which reference has heretofore been made. He also testified as follows:

"Q. Was there any effect upon you at the time you lifted on this transformer? A. Yes.

"Q. Upon your physical frame? A. Yes there was. I felt considerable strain from that lift and made the remark to Jim (Stanton) that I felt these bones just grind in my back. We were comparing other heavy lifts that we had had. . . . .

"Q. Did he say anything at the time about the heavy lift? A. Yes. He said it hurt his back too. . . . .

"Q. Tell how you felt and your condition. A. The longer I worked at this it seemed that the worse this condition became, and until the last few weeks of my work—I believe Stanton will bear me out,—that my work was rather slack. I didn't know until a day or so ago that they had ever noticed it. . . . .

"Q. Did you keep on with your work with Stanton Brothers? A. I did.

"Q. Did you make any special complaint to them? A. Nothing more than just ordinary daily complaint.

"Q. What was that? A. Just what we would comment. . . . .

"Q. You said daily complaint. What would you say and when would you say it? A. We would say that our backs were shot.

"Q. To whom did you talk? A. I talked almost altogether with Jim Stanton and Fred Nichols. . . . .

"Q. State now, what was said by you in these conversations when you state you made nearly daily complaint. A. Well, that was so frequent. . . . . We would complain about our backs being broken. That was our common talk. I did and Jim Stanton did. That was our common conversation. 'My back is broke.' That was the common expression."

Respondent's Exhibit II, being a letter addressed to State Insurance Fund, P. C. O'Malley, manager, dated July 14, 1931, written by F. J. Stanton in behalf of Independent Transfer & Storage Co., contains the following statements, among others:

"We were not notified of the injury to Mr. Cooper until the time the claim, at which time Dr. J. C. Woodward called us, stating that Mr. Cooper had an injury to his back of some time standing and that he claimed he got the injury while helping load a motor or transformer while in our employ. Mr. Cooper was working for us up to about April 1st. We have a recollection of him mentioning that he had wrenched his back slightly but none of us thot anything of it. We heard that he was laid up with his back shortly after leaving our service but he did not report the matter to us.

"Mr. James Stanton helped Mr. Cooper load the article mentioned and does not remember whether Mr. Cooper complained of having injured his back at the time or not, if he did the injury was considered so slight that neither of us thot it was of such a nature that would cause any trouble. When we say we have a recollection of him mentioning about wrenching his back, could not say whether it

was the time for which he is making claim or not. He told us of the job he was hurt on and we looked up the transaction on our books and that is the way the date was established.''

James W. Stanton testified as a witness on behalf of respondent as follows:

Q. ''Do you remember about Mr. Cooper at any time complaining about his back being pretty badly strained by lifting? A. Why, I remember shortly before, perhaps a month or six weeks before he quit, that after the school run was over one morning,—I remember that particularly because my attention was brought to it afterwards. I says: 'Well, yesterday was a hard day. My back felt pretty sore this morning.' And he says: 'I have been bothered quite a bit with my back lately.' He says 'It just is bothering me quite a bit on every job I go on.' . . . .

''Q. Did you at any time ever say anything to your brother Fred, who was just on the stand, regarding the condition of Mr. Cooper or his lack of pep? A. Why, I was in the office one day, and he happened to mention to me that it seemed like Mr. Cooper didn't show the pep that he had been showing in his work and was wondering what was the matter, and that is the reason I remembered this other instance, because I said to him: 'Well, now, his back has been bothering him,—he has complained to me about his back' and I says 'You know I have had enough of trouble with my back so that I know that a backache will take the pep out of you about as quick as anything that you can have in our line of work.' . . . .

''Q. And that conversation occurred between the 20th of February and the time that he left? A. I imagine so. It was towards the last somewhere, I imagine four to six weeks.''

The foregoing conversation occurred well within the sixty-day limit for the giving of written notice as prescribed by I. C. A., sec. 43–1202.

The evidence discloses that the injury sustained as a result of the accident was progressive and at the time of

the hearing respondent was totally disabled. That neither the employers nor respondent had knowledge of the seriousness of the injury may, we think, be conceded. Under the general rule so frequently announced by this court, the provisions of the Workmen's Compensation Act must be liberally construed with a view to effect its object and promote justice. (I. C. A., secs. 43–902, 70–102; *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 786, 203 Pac. 1068; *Ramsay v. Sullivan Min. Co.*, 51 Ida. 366, 371, 6 Pac. (2d) 856.) We have reached the conclusion that there is sufficient uncontradicted, competent evidence to support the trial court's finding that the employers had knowledge of the accident and the injury resulting therefrom. This being true, it becomes unnecessary to consider the question of prejudice by delay or want of notice.

The second question presented is: Did the trial court err in entering an independent judgment in lieu of remanding the case to the Industrial Accident Board with directions to enter up an award? Appellants concede in their brief that the trial court's jurisdiction was exhausted when it entered a judgment awarding compensation and allowance for medical services from April 7, 1931, up to and including the determination of the matter by the board on October 10, 1931, with interest thereon, but that the trial court exceeded its jurisdiction in entering judgment for respondent in the sum of $11.25 per week for each and every week from and after October 10, 1931, during the period of respondent's continued total disability not to exceed 400 weeks from and after April 7, 1931, and thereafter $6 per week during the period of his continued total disability; also that he have judgment for further reasonable and necessary cost of medical attention on account of said total disability.

■■ It would seem that the rule has been established in this jurisdiction that the district court, upon appeal and review of an award of the Industrial Accident Board, his jurisdiction to enter up an independent judgment where both parties had full opportunity to present their testimony as they desired and it appears that they had a complete hear-

ing upon all of the questions presented, which is true in the instant case. (*Ybaibarriaga v. Farmer*, 39 Ida. 361, 228 Pac. 227; *Jenkins v. Boise Payette Lumber Co.*, 49 Ida. 31, 287 Pac. 204 (on rehearing); *Johnston v. A. C. White Lumber Co.*, 37 Ida. 617, 217 Pac. 979; *Burchett v. Anaconda Copper Co.*, 48 Ida. 524, 283 Pac. 515.) However, in the interest of orderly procedure and so that either of the parties, on a subsequent change in conditions, may properly avail themselves of the provisions of I. C. A., sec. 43–1407, it would seem appropriate that whenever the district court enters an independent judgment authorized by the foregoing authorities, such judgment should make provision for the notification of the Industrial Accident Board thereof, and direct it to enter an award in accordance therewith.

The judgment is affirmed, with instructions to the district court to notify the Industrial Accident Board thereof and direct said board to enter an award in accordance therewith. Costs are awarded to respondent.

Givens and Holden, JJ., concur.

Morgan, J., dissents.